694 F.2d 327
 NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Petitioner,
v.
Chester FISHEL, Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 81-2217.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 10, 1982.
Decided Nov. 29, 1982.
 
 Lawrence P. Postol, Washington, D.C. (Junius C. McElveen, Jr., Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., on brief), for petitioner.
 Richard W. Hudgins, Newport News, Va. (Linda S. Prince, Hudgins & Neale, Newport News, Va., on brief), for respondents.
 Before WIDENER, HALL and ERVIN, Circuit Judges.
 K.K. HALL, Circuit Judge:
 
 
 1
 Newport News Shipbuilding and Dry Dock Company (Newport News) petitions this Court to set aside a Department of Labor Benefits Review Board order requiring Newport News to compensate Chester T. Fishel for the full amount of his disability claim filed pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et seq. (Longshoremen's Act). Finding the Board's order supported by both the law and the evidence, we affirm.
 
 I.
 
 2
 Chester Fishel was employed by Newport News in 1971. Prior to that time he had worked for several smaller shipyards. Before he commenced employment at Newport News, Fishel underwent a pre-employment audiological screening test which revealed a binaural hearing loss of 25.3%.
 
 
 3
 As with his prior jobs, Fishel worked as a "burner" at Newport News which required the use of various types of torches to cut metal, usually in a noisy working environment. In May, 1979, after over seven years at that job, Fishel underwent a complete audiological exam which indicated that his binaural hearing loss had increased to 31.25%. He subsequently filed for disability compensation under the Longshoremen's Act, 33 U.S.C. Sec. 908(c)(19).
 
 
 4
 Prior to a hearing on Fishel's claim, the parties stipulated, inter alia, that the nature and extent of the injury was a noise induced, occupationally-related hearing loss, and that a portion of the total hearing loss arose out of and in the course of Fishel's employment at Newport News. At the hearing, Newport News offered the testimony of its audiologist who performed the hearing tests on Fishel in 1971 and 1979 and submitted copies of the evaluation reports reflecting the results of those tests. Based on this evidence, Newport News argued that, since the amount of hearing loss attributable to Fishel's work at its shipyard was measurable, it should only be required to compensate him for the increased disability. The ALJ rejected this argument and held that Newport News must compensate Fishel for the full 31.25% hearing loss. Since the compensation period for 100% hearing loss is 200 weeks, id., the ALJ prorated Fishel's entitlement to 62.5 weeks. The Benefits Review Board affirmed, and Newport News appeals.
 
 II.
 
 5
 As this is a "case where an employee having an existing permanent partial disability suffers injury," payment of Fishel's compensation is made pursuant to 33 U.S.C. Sec. 908(f), which provides, in relevant part:
 
 
 6
 If following [a scheduled] injury ..., the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is greater.
 
 
 7
 A literal reading of this section would require Newport News to compensate the claimant for 104 weeks, which is 41.5 weeks more than Fishel is entitled to for his entire partial hearing loss. We decline to read the statute to reach such an absurd result.[1] Consequently, the question we must decide is whether an employer who hires an individual with a known pre-existing disability, which is subsequently aggravated, is responsible for the entire disability or for only the subsequent or second injury, when the employee's aggregate injury entitles him to less than 104 weeks of compensation. This issue is one of first impression for this Court.
 
 
 8
 Under the Longshoremen's Act, the term "injury" is defined to include "accidental injury or death arising out of or in the course of employment...." 33 U.S.C. Sec. 902(2). Through what has come to be known as the aggravation rule, the courts have extended this definition such that, if an employment injury aggravates, accelerates, or combines with a previous infirmity, the entire disability is compensable. Hensley v. Washington Metropolitan Area Transit Authority, 655 F.2d 264, 268 (D.C.Cir.1981); Wheatley v. Adler, 407 F.2d 307, 312 (D.C.Cir.1968) (en banc); J.V. Vozzolo, Inc. v. Britton, 377 F.2d 144, 147-48 (D.C.Cir.1967); Independent Stevedore Co. v. O'Leary, 357 F.2d 812, 814-15 (9th Cir.1966); see also Hampton Roads Stevedoring Corp. v. O'Hearne, 184 F.2d 76, 78 (4th Cir.1950). The reason behind this rule appears to be twofold: (1) the difficulty in apportioning the degree of disability between pre-employment (or non-employment) causes and employment cause and (2) the presumption of compensability grounded in the humanitarian nature of the Longshoremen's Act. In the instant case, the ALJ found that Fishel's Newport News injury accelerated, aggravated, or combined with his prior hearing impairment and thus, applying the aggravation rule, held that the entire hearing loss was compensable.
 
 
 9
 The thrust of petitioner's argument is that the aggravation doctrine should apply only in cases where a claimant's pre-employment level of disability could not be or was not measured at the time he was employed. Accordingly, it argues that since Fishel's pre-employment hearing loss was measured, it would be unfair to hold Newport News responsible for any more than the increase in his hearing loss of 5.95%.[2]
 
 
 10
 Despite the superficial attractiveness of petitioner's argument, we cannot accept it for two reasons: first, it simply cuts against the humanitarian purpose underlying the Longshoremen's Act, and second, it is unsupported by the legislative history which indicates that this gap in the statutory scheme was recognized and left unresolved at the time the Act was adopted.
 
 
 11
 The Board's extension of the aggravation rule to the instant set of facts "is in accord with the humanitarian nature of the Act as exemplified by the statutory command that '[i]n any proceeding for the enforcement of a claim for compensation under this chapter, it shall be presumed, in the absence of substantial evidence to the contrary ... [t]hat the claim comes within the provisions of this chapter.' Sec. 20(a), 33 U.S.C. Sec. 920(a)." O'Keeffe v. Smith, Hinchman & Grylls Assocs., Inc., 380 U.S. 359, 362-63, 85 S.Ct. 1012, 1015, 13 L.Ed.2d 895 (1965); see also Hensley v. Washington Metropolitan Area Transit Authority, 655 F.2d at 267. Moreover, "[b]enefits under the Act are not limited to employees who happen to enjoy good health; rather, employers accept with their employees the frailties that predispose them to bodily hurt." J.V. Vozzolo, Inc. v. Britton, 377 F.2d at 147 (emphasis supplied). The fact that some pre-employment injuries, such as hearing loss, are measurable while others are not is not enough to prevent a given employee from collecting full compensation. The purpose of the Act is to help longshoremen. Reed v. Steamship Yaka, 373 U.S. 410, 415, 83 S.Ct. 1349, 1353, 10 L.Ed.2d 448 (1963). In our view, that purpose would simply not be promoted by the rule proposed by petitioner.
 
 
 12
 In addition to the humanitarian purpose supporting the Board's decision, a review of the legislative history indicates that Congress considered a clause which would have prevented the burden now being placed on Newport News, but declined to incorporate that addition into the statutory scheme. Specifically, a representative of the Council of American Shipbuilders, Inc., and the New York & New Jersey Dry Dock Association proposed adding a statement to the Act which read:
 
 
 13
 But only such proportion [of the disability] shall be compensated by the employer in whose employment disability begins as the period employed by such employer bears to the total period of accumulation of such disease.[3]
 
 
 14
 Such a provision would have limited an employer's liability to that portion of the employee's disability which could reasonably have been caused by that job and, thus, would have protected an employer from being forced to pay full compensation for an injury which originated and partially developed prior to that employment.
 
 
 15
 By refusing to include the proposed clause, or any provision which would have suggested an intent to limit an employer's liability under the circumstances presented here, Congress clearly implied that it did not intend to force longshoremen and harbor workers to seek compensation from every employer whose employment may have contributed to a particular disability. We too decline to establish such a rule and, therefore, hold that Newport News must compensate Chester Fishel for the entire 31.25% of his hearing loss.[4]
 
 
 16
 Accordingly, the decision of the Benefits Review Board, affirming the ALJ's order for full compensation, is hereby affirmed.
 
 
 17
 AFFIRMED.
 
 WIDENER, Circuit Judge, concurring:
 
 18
 I concur in the result.
 
 
 19
 The majority opinion correctly finds that payment for the injury, if made at all, must be made under Sec. 908(f) of the statute and that a literal reading of that section would require Newport News to compensate the claimant for 104 weeks, which is 41.5 weeks more than the claimant would be entitled to for his entire partial hearing loss.
 
 
 20
 I join with the majority in declining to read the statute to get such a strained result.
 
 
 21
 At that point, however, I would simply approve the award of 62.5 weeks as the lesser of the two periods (the statute is based on reducing the period of awards to prorate rather than the amount of each payment).
 
 
 22
 I think it is an unjustifiable reaching out both by the Board and by the majority to apply "the aggravation rule." Other cases will doubtless come along in which it is necessary to decide whether or not "the aggravation rule" applies. Because I do not think that it is necessary here, I concur in the result only for the reasons I have stated.
 
 
 
 [1]
 During oral argument, counsel for both sides agreed that compensation for 104 weeks was not proper under the facts of this case
 
 
 [2]
 At this juncture, we note that Newport News also argues that the "last employer rule" should not be employed to entitle Fishel to full compensation. Under that doctrine, the last employer to merely expose a worker to the injurious stimuli, before his occupational disease manifests itself, is liable for the entire disability caused by the disease. See Travelers Insurance Co. v. Cardillo, 225 F.2d 137, 145 (2nd Cir.), cert. denied 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). In the instant case, it is clear that this rule does not apply because the evidence indicates that Fishel's hearing loss had manifested itself prior to his employment at Newport News. Consequently, we will consider the Board's decision only as an application of the aggravation rule
 
 
 [3]
 Hearing before the Committee on the Judiciary of the House of Representatives on H.R. 9498, 69th Congress, First Session (1926)
 
 
 [4]
 We emphasize, however, that this holding is limited to the facts of this case, where the claimant's aggregate partial disability entitles him to less than 104 weeks of compensation under 33 U.S.C. Sec. 908