932 F.2d 836
 1993 A.M.C. 1813
 PORT OF PORTLAND, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; United
States Department of Labor, Respondents.
SAIF CORPORATION; Jones Oregon Stevedoring Company;
Brady-Hamilton Stevedore Company; Or Port of
Portland, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS; Donald
R. Ronne, Sr., Respondents.
 Nos. 89-70353, 89-70409.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 11, 1990.
Decided May 10, 1991.
 
 David L. Runner, Asst. Atty. Gen., Salem, Or., for petitioners.
 Robert E. Babcock, Laughlin, Falbo, Levy & Moresi, Long Beach, Cal., for petitioner Port of Portland.
 Nathaniel I. Spiller, Senior Appellate Atty., U.S. Dept. of Labor, Washington, D.C., for respondent Director.
 Petition for Review of an Order of the Benefits Review Board.
 Before CANBY, KOZINSKI and TROTT, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 Port of Portland and its insurer, the SAIF Corporation, petition for review of an order of the Benefits Review Board of the Department of Labor awarding benefits to Donald Ronne on his claim arising under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Sec. 901-950. The Board determined that Ronne is entitled to compensation for the full amount of his hearing loss even though some of it may have been attributable to the aging process. The Board also held Port of Portland, Ronne's employer at the time he received the results of the determinative audiogram, responsible for paying the award rather than Jones Oregon Stevedoring Company (Jones Oregon), Ronne's last exposing employer before the audiogram was performed.
 
 
 2
 We affirm the full compensation determination but reverse as to the responsible party.
 
 FACTS AND PROCEEDINGS BELOW
 
 3
 Ronne worked as a winch and crane operator for a number of employers between 1970 and 1979 and was regularly exposed to excessive noise. Following a two year absence from work due to an arm injury, Ronne worked on June 11, 1981, for Brady-Hamilton; on June 19, 1981, for Jones Oregon; and on June 26, 1981, for Port of Portland. Port of Portland was insured by SAIF Corporation until July 1, 1981, and was self-insured after that date.
 
 
 4
 On June 19, 1981, Ronne went to Dr. Bergeron because he was experiencing hearing difficulties. Dr. Bergeron examined Ronne and scheduled an audiogram that was performed on June 22, 1981. The audiogram showed an 8.75 percent sensori neural hearing loss which, according to Dr. Bergeron, is characteristic of noise-induced, work-related hearing loss.
 
 
 5
 After the audiogram, Ronne met with Dr. Bergeron and requested that he send a full report to Ronne's attorney. The attorney received the doctor's report and audiogram results on July 6, 1981. On October 1, 1981, Ronne met with his attorney, viewed the written report for the first time, and filed notices of injury and claims against his various employers and their insurance carriers under section 8(c)(13) of the LHWCA. Ronne contended that permanent loss of hearing had resulted from repeated exposures to noise during his employment as a longshoreman.
 
 
 6
 The employers and insurers contested the claims. After a full hearing, the Administrative Law Judge (ALJ) dismissed the claim as time-barred. On appeal, the Board reversed and remanded the case to the ALJ for further proceedings.
 
 
 7
 After hearing conflicting medical evidence as to how much of Ronne's hearing loss was attributable to presbycusis (age-related hearing loss), the ALJ awarded Ronne permanent partial disability compensation for all of his hearing loss. The ALJ assigned liability for payment of this award to Jones Oregon because it was the last employer to expose Ronne to industrial noise prior to the audiogram.
 
 
 8
 On appeal, the Board affirmed the ALJ's decision that Ronne was entitled to compensation for his entire hearing loss, without reduction for the effect of presbycusis. The Board held Port of Portland rather than Jones Oregon to be the liable employer. The Board held that liability was fixed on the date of Ronne's "awareness" of his disability, and that Ronne became aware on July 6, 1981, the day his attorney received the written audiogram report.
 
 
 9
 Port of Portland and SAIF Corporation, appeal the Board's decision.
 
 ANALYSIS
 I. Scope of Review
 
 10
 In LHWCA proceedings, the Board must accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence. Todd Shipyards Corp. v. Black, 717 F.2d 1280, 1284 (9th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). We review the Board's decisions for errors of law and adherence to the substantial evidence standard. Bumble Bee Seafoods v. Director, Office of Workers' Compensation Program, 629 F.2d 1327, 1329 (9th Cir.1980). Because the Board is not a policymaking body, we accord no special deference to its interpretation of the LHWCA. Black, 717 F.2d at 1284. We do, however, defer to the statutory interpretations of the Director of the Office of Workers' Compensation Programs. Director, OWCP v. Palmer Coking Coal Co., 867 F.2d 552, 555 (9th Cir.1989). While we also respect reasonable interpretations by the Board, the "distinction in the deference owed the Director and the Board is significant ... where their positions conflict with respect to the issues raised on appeal." McDonald v. Director, OWCP, 897 F.2d 1510, 1512 (9th Cir.1990). The distinction is significant in the present case because, while the Board and the Director are of one mind with regard to the extent of the award, they differ as to which employer should be held liable.
 
 II. Amount of the Award
 
 11
 The first question we address is whether Ronne is entitled to compensation for the full amount of his hearing loss. The Board, applying its consistent interpretation of the aggravation rule, based Ronne's award on his total disability without factoring out that portion of his hearing loss which may be attributable to presbycusis. The Director supports the Board's position. Port of Portland argues, however, that the aggravation rule does not apply in this case because the noise-induced hearing loss had no effect on the underlying age-induced loss, and the aggravation rule may not be applied in a purely additive manner. We cannot accept Port of Portland's argument for two reasons: first, it is in conflict with LHWCA precedent, and second, it overlooks the policy underlying the LHWCA.
 
 
 12
 The aggravation rule is a doctrine of general workers' compensation law which provides that, where an employment injury aggravates, accelerates, or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable.[1] Independent Stevedore Co. v. O'Leary, 357 F.2d 812, 814-15 (9th Cir.1966). Accord, Strachan Shipping Co. v. Nash, 782 F.2d 513, 517 (5th Cir.1986) (en banc); Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d 327, 329 (4th Cir.1982). This doctrine does not require that the employment injury interact with the underlying condition itself to produce some worsening of the underlying impairment. See Independent Stevedore, 357 F.2d at 815 (citing with approval Schreven v. Industrial Comm., 96 Ariz. 143, 393 P.2d 150, 152 (1964) (claimant who had a congenital back deformity and suffered a disabling employment accident awarded full compensation even though "the back strain did not worsen the congenital abnormality.")). The fact that part of Ronne's disability may have been due to a non-employment condition does not require him to prove that his disabilities combined in more than an additive way to warrant compensation for the resulting overall impairment. See Strachan Shipping, 782 F.2d at 516 n. 5 (the combined disability of 34% was merely the sum of the percentages attributable to each of three distinct knee injuries); Newport News, 694 F.2d at 328-29 (claimant awarded full 31.25% hearing loss without need to determine whether 5.95% current work-related loss worsened or affected pre-employment 25.3% loss).
 
 
 13
 This interpretation of the aggravation rule is in accord with LHWCA's underlying purpose of "provid[ing] a single complete recovery to the employee." Strachan Shipping, 782 F.2d at 518 (footnote omitted). The worker who is already impaired before his work-related injury suffers a level of disability more severe than would an unimpaired worker sustaining the same injury on the job. It would undercompensate the impaired worker to limit his or her award to that available to the unimpaired.[2] The LHWCA recognizes this fact; indeed, the aggravation rule applies "even though the worker did not incur the greater part of his injury with that particular employer." Id. at 519 n. 10. Port of Portland's interpretation of the aggravation rule undermines the policy of providing an injured employee with a complete recovery for his disabilities. Ronne is entitled to full compensation without reduction for the portion of his disability attributable to a possible age-related hearing loss.
 
 III. Responsible Employer
 
 14
 The more difficult question presented by this case is that of determining which of Ronne's successive employers shall bear the burden of paying his award. Port of Portland argues that the Board applied the "last employer rule"[3] incorrectly in this case. We agree.
 
 
 15
 The seminal case on the "last employer rule" is Traveler's Insurance Co. v. Cardillo, 225 F.2d 137 (2d Cir.) cert. denied, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955). In Cardillo, the Court stated the general rule as follows:
 
 
 16
 ... the employer during the last employment in which claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award.
 
 
 17
 Id. at 145.
 
 
 18
 This circuit adopted the Cardillo rule in Cordero v. Triple A Machine Shop, 580 F.2d 1331, 1337 (9th Cir.1978), cert. denied, 440 U.S. 911, 99 S.Ct. 1223, 59 L.Ed.2d 459 (1979).[4] Cordero emphasized the "onset of disability" as a key factor in assessing liability under Cardillo. Cordero, 580 F.2d at 1337. Liability should fall on the employer "covering the risk at the time of the most recent injury that bears a casual [sic] relation to the disability." Id. at 1336. Of particular significance in Cordero is the fact that Cordero had worked for Triple A for approximately three months prior to diagnosis by a physician of total disability. We held Triple A responsible for the entire disability because "there [was] a rational connection between the length of employment proven and the contribution to the development and aggravation of the disease." Id. See also Todd Pacific Shipyards v. Director, Office of Workers' Compensation Program, 914 F.2d 1317 (9th Cir.1990), amended by No. 89-70309 (9th Cir. Nov. 8, 1990).
 
 
 19
 That "rational connection" is missing in this case if liability is imposed on Port of Portland. Ronne's audiogram was performed on June 22, 1981; the results showing an 8.75 percent hearing loss reflect the damage to Ronne's hearing as of that date and establish the amount of his claimed compensation. It is factually impossible for Ronne's employment with Port of Portland, which began four days after the audiogram was administered, to have contributed in any way to Ronne's hearing loss. We agree with the Board that Cordero does not require a demonstrated medical causal relationship between claimant's exposure and his occupational disease. But Cordero does require that liability rest on the employer covering the risk at the time of the most recent injurious exposure related to the disability.[5] We therefore agree with the Director that liability in this case must fall on Jones Oregon, the last employer who, by injurious exposure, could have contributed causally to Ronne's disability. We reject the contrary conclusion of the Board. The fact that Ronne may have experienced subsequent exposure to industrial noise while working for Port of Portland is irrelevant because no part of the claim is based on any such exposure.
 
 
 20
 The Board, in holding Port of Portland to be the liable employer, fixed liability on the date Ronne became "aware" of his disability--the date that his attorney received the audiogram report. It is true that Cardillo referred to the last injurious exposure before the employee became "aware" of his occupational disease, Cardillo, 225 F.2d at 145, but in that case nothing turned on the distinction between the date of awareness and the date of onset of the disability. We reject any reading of Cardillo that would impose liability on an employer who could not, even theoretically, have contributed to the causation of the disability. Our emphasis on rational connection and causal relation in Cordero militates against such a reading. See Cordero, 580 F.2d at 1336, 1337.
 
 
 21
 We also reject the Board's view that the same date of "awareness" must govern for purposes of fixing employer liability and for purposes of starting the running of limitations. See 33 U.S.C. Secs. 908, 912-13 (1990).[6] We find no support for this conclusion.[7]
 
 
 22
 There is no indication that Congress intended to make the receipt of the audiogram and accompanying written report, the events that begin the clock running for notice and filing purposes, crucial outside the procedural requirements of Sections 12 and 13. In fact, at the same time it adopted the time-bar provision, but in the context of amending section 8(f) as it applied to certain hearing loss cases, Congress stated that it had no intention of disturbing Cardillo with respect to the last exposure principle. H.R.Conf.Rep. No. 1027, at 28, reprinted in 1984 U.S.Code Cong. & Admin.News at 2734, 2778.
 
 
 23
 The purposes underlying the time-bar provisions and the last employer rule are distinct. The primary purposes of the notice and filing requirements of sections 12 and 13 are to protect employers and insurers from fraudulent claims and to facilitate prompt investigation of injurious working conditions by requiring the claimant to reveal the existence of an alleged injury or disease within a reasonable time of the claimant's awareness of its existence. Smith v. Aerojet-General Shipyards, Inc., 647 F.2d 518, 524 (5th Cir.1981). The purpose of the last employer rule is to assign liability for an occupational disease to one of several potentially liable employers or insurers and thereby avoid the administrative difficulties and delays that would accompany an apportionment of liability. Cardillo, 225 F.2d at 145.
 
 
 24
 There is no evidence that Congress--through the indirect means of amending the procedural rules governing notice and filing--intended in any way to affect the substantive decision on assignment of liability. Cardillo remains good law. Under the Cardillo-Cordero rule, liability falls on Jones Oregon, the last employer to expose Ronne to injurious stimuli prior to the administration of the determinative audiogram.
 
 CONCLUSION
 
 25
 Ronne is entitled to full compensation for his hearing disability. The possibility that a portion of this hearing loss is attributable to presbycusis does not diminish the size of his award.
 
 
 26
 Liability for payment of Ronne's award falls on Jones Oregon, the employer covering the risk at the time of the most recent injurious exposure related to the disability.
 
 
 27
 The order of the Benefits Review Board entered against Port of Portland is reversed, and the matter is remanded to the Board for further proceedings consistent with this opinion.
 
 
 28
 REVERSED AND REMANDED.
 
 
 
 [1]
 The LHWCA mitigates the harshness of the aggravation principle on a given employer in two significant respects. First, Section 8(f) of the Act, 33 U.S.C. 908(f) (1986), limits an employer's liability in certain "second injury" cases, while shifting the remaining liability to a special industry fund. See Strachan Shipping Co. v. Nash, 782 F.2d 513, 520 (5th Cir.1986) (en banc). Second, an employee may not obtain a double recovery for a disability for which compensation has already been paid. 33 U.S.C. 903(e) (1986); Strachan Shipping, 782 F.2d at 520
 
 
 [2]
 "Benefits under the Act are not limited to employees who happen to enjoy good health; rather, employers accept with their employees the frailties that predispose them to bodily hurt." J.V. Vozzolo, Inc. v. Britton, 377 F.2d 144, 147-48 (D.C.Cir.1967)
 
 
 [3]
 The "last employer rule" or "last injurious exposure rule" is a judicially-created doctrine whereby full liability for an occupational disease resulting from the claimant's exposure to injurious stimuli during more than one period of employment or insurance coverage is assigned to a single employer or insurer. See Travelers Insurance Co. v. Cardillo, 225 F.2d 137 (2d Cir.1955) cert. denied, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955); see generally 4 A. Larson, The Law of Workmen's Compensation Secs. 95.10, 95.24 (1989)
 
 
 [4]
 We recently reaffirmed our adoption of the Cardillo rule in Lustig v. Director, Office of Workers' Compensation Program, 881 F.2d 593, 596 (9th Cir.1989). See also Todd Shipyards Corp. v. Black, 717 F.2d 1280 (9th Cir.1983) (addressing the Last Covered Employer Rule when only one of two potentially responsible employers was covered by the Act)
 
 
 [5]
 In Cardillo and Cordero the hearing losses and respiratory impairment of those claimants were all determined (either by appropriate audiologic measurement in the case of the hearing losses, or by diagnosis of a physician in the case of the respiratory impairment) after the last employment that was ultimately found to have produced injurious stimuli
 
 
 [6]
 Sections 12 and 13 require the claimant to provide notice of an occupational disease and to file a claim within specified periods of the date upon which "the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability." 33 U.S.C. Sec. 913(b)(2) (1990). The 1984 amendments added a new section, 8(c)(13)(D), which provides that the time for filing a hearing loss claim does not commence until a claimant receives an audiogram and accompanying written report indicating work-related hearing loss. See 33 U.S.C. Sec. 908(c)(13)(D) (1990)
 
 
 [7]
 The Board relied on and reaffirmed Larson v. Jones Oregon Stevedoring Co., 17 BRBS 205 (BRB 1985), a case that did not reach this court