16 F.3d 410
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 MCLEAN CONTRACTING COMPANY, INC.; Fidelity and Casualty
Company of New York, Petitioners,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor, Respondent.
 No. 93-1606.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1993.
Decided Jan. 13, 1994.
 
 On Petition for Review of an Order of the Benefits Review Board.
 R. John Barrett, Vandeventer, Black, Meredith & Martin, Norfolk, VA, for petitioner.
 Laura J. Stomski, Washington, D.C., for Respondent.
 Thomas J. Duff, Vandeventer, Black Meredith & Martin, Norfolk, VA, for petitioner.
 Thomas S. Williamson, Jr., Sol. Labor, Carol A. De Deo, Associate Sol., Janet R. Dunlop, for Longshore, Washington, D.C., for respondent.
 Ben. Rev. Bd.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and NIEMEYER, Circuit Judges.
 
 OPINION
 PER CURIAM
 
 1
 In this Longshore and Harbor Workers' Compensation Act[1] (LHWCA) case, McLean Contracting Company petitions for review of an order of the Benefits Review Board (BRB), affirming the decision of an administrative law judge (ALJ), finding McLean liable for all permanent total disability payments to an injured employee. We affirm.
 
 I.
 
 2
 In 1969, Wilbert Browder injured his back in a car accident. He was in the hospital for nine days and missed four or five months of work. He recovered, but, on December 31, 1973, and May 30, 1974, he injured his back on the job at Tidewater Construction Company. Browder missed five or six months of work after the May 30 accident.
 
 
 3
 Browder went to work for petitioner McLean Contracting Company in 1976.[2] On March 2, 1984, while lifting one end of a heavy steel plate, he suffered a herniated disc in his lower back. As a result of this injury, two lumbar discs were surgically removed. He has been awarded permanent total disability benefits under LHWCA. This petition for review does not challenge Browder's entitlement to benefits; rather, it is simply a dispute over who should pay them. McLean sought to limit its liability to 104 weeks of benefits, with the remainder coming from the "second injury fund" maintained by the Department of Labor. The ALJ held initially and on request for modification that McLean was liable for all of Browder's benefits, and the BRB affirmed.
 
 
 4
 McLean petitions for review pursuant to 33 U.S.C.Sec. 921(c). We must affirm the final decision if it is in accordance with law and its factual findings are supported by substantial evidence. 33 U.S.C. Sec. 921(b)(3); Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 II.
 
 5
 Under LHWCA, the employer is liable for the entire level of disability resulting from a work-related injury, regardless of any preexisting infirmity or susceptibility that may have aggravated the work-related injury. Newport News Shipbuilding & Dry Dock Co. v. Fishel, 694 F.2d 327 (4th Cir.1982). Because this rule might foster employment discrimination against the handicapped, Congress created a "second injury fund" to assume liability for certain disability payments when a preexisting disability contributes to the severity of a later injury. 33 U.S.C. Sec. 908(f)(1). When the fund is liable, the employer pays 104 weeks of compensation, and the fund then takes over.
 
 
 6
 To obtain relief from the second injury fund, the employer has the burden of proving that the employee had a preexisting partial disability that was manifest to the employer[3] and that the permanent total disability is not due solely to the current injury. DOWCP v. Newport News Shipbuilding & Dry Dock Co. [Langley], 676 F.2d 110, 114 (4th Cir.1982). The ALJ should construe the evidence on a "second fund" issue liberally in favor of the employer. DOWCP v. Newport News Shipbuilding & Dry Dock Co. [Barclift], 737 F.2d 1295, 1298 (4th Cir.1984).
 
 
 7
 "Disability" is defined in the statute as"incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. Sec. 902(10). "Injury," in turn, is defined to apply only to on-the-job injuries. 33 U.S.C. Sec. 902(2). Thus, if it were read literally, the statute would exclude "second injury fund" protection for employers who hire persons with congenital handicaps or whose disability, though caused by an injury, did not result from an on-the-job accident. Because this "mechanical" reading would "create obvious incongruities in the language" and "destroy one of the major purposes of the second injury provision: the prevention of employer discrimination against handicapped workers," the Supreme Court decided that"disability" in Sec. 908(f)(1) is used in a broader, "more usual" sense. Lawson v. Suwanee Fruit & Steamship Co., 336 U.S. 198 (1949).[4]
 
 
 8
 So, then, what is a "preexisting partial disability?" It is (i) a scheduled impairment;[5] (ii) a serious, lasting physical condition that causes an actual loss of wage-earning capacity;[6] or (iii) a serious, lasting physical condition that, though the worker is able to do any job he would be able to do without the condition, would motivate a "cautious employer" to fire or refuse to hire the employee out of fear of incurring greater liability for LHWCA benefits.[7]
 
 
 9
 Browder did not have a scheduled impairment, and, until his 1984 accident, he actually earned comparable wages to those he earned before his 1973-1974 back injuries. Thus, the only means to find him partially disabled is through the "cautious employer" test.
 
 
 10
 After the 1974 accident, Browder was examined and treated by several physicians. At the time, there were no objective findings as to the cause of Browder's pain. X-rays and a myelogram were normal. Dr. Arthur A. Kirk reported on February 24, 1975, that Browder "still has evidence of a low back sprain which is mild. He should continue on conservative treatment. He will probably continue to have some low back discomfort on heavy work or excessive exercise with some reoccurrences of acute discomfort." On May 15, 1975, Dr. Richard K. Neal gave an even more optimistic picture:
 
 
 11
 My impression is that the patient appears to have made a good recovery from low back muscular strain injuries that he sustained at work.... He does not appear to have any permanent disability as a result of these injuries. There is a small possibility that he could be having symptoms of what will turn out to be a lower lumbar disc lesion, but only continued observation and symptomatic measures are indicated in that regard unless his symptoms should become more severe and of a persistent nature.
 
 
 12
 The medical record is then silent until the 1984 injury. Browder testified at the hearing that his back condition did not cause him to miss work for over eight years. The ALJ found that Browder's earlier back injuries had not resulted in a preexisting partial disability.[8]
 
 
 13
 The employer requested modification, 33 U.S.C. Sec. 922, and it supplemented the record in support of its request. It took Browder's deposition, at which he stated that he had experienced back pain throughout the 1975-1984 period and that, though he had not been off work on compensation, he had occasionally taken a sick day because of back pain. He took aspirin for the pain and used a heating pad. He wore a back brace once or twice a week. When he had back pain at work, McLean assigned someone to help him lift.
 
 
 14
 The employer also deposed Dr. Kirk in connection with its request for modification. Dr. Kirk testified, "I think from his symptoms it was rather obvious [in 1975] he had some splits or tears of the disk, of the degenerative disk, and he had some evidence the nerve root was being pressed on, probably from a disk." Dr. Kirk went on to explain that the tears made Browder more susceptible to later injuries like the ruptured disc. Two other doctors were then deposed, and each agreed that, if Browder had tears in his disc, chronic deterioration of the disc would follow.
 
 
 15
 Notwithstanding this new evidence, the ALJ adhered to his original decision.[9] He found that Dr. Kirk's 1988 deposition testimony was less reliable than his on-the-spot diagnosis of"mild" back sprain in 1975. The other doctors' opinions, which were dependent on the premises of Kirk's 1988 testimony, fell with it. The ALJ pointed to Browder's good work record and his ability to control his back pain with minor at-home treatment as evidence that his back problem was not particularly serious. Finally, Browder's jobs--welding, rigging, and driving piles--were extremely strenuous. They required lifting, stretching, and even jumping. The ALJ found that occasional back pain and stiffness is almost inevitable in such a job.
 
 
 16
 Under the cautious employer test, this evidence presents a close factual call, which means that it must be affirmed. We have ALJs to make close factual calls, and we may not set aside findings that are supported by substantial evidence even if contrary findings might seem to us more reasonable. Newport News Shipbuilding & Dry Dock Co. v. Tann, 841 F.2d 540, 543 (4th Cir.1988).
 
 
 17
 The final decision of the BRB is affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 33 U.S.C. Secs. 901-950
 
 
 [2]
 He later left McLean, worked for a year and a half for Rose Marine, and then returned to McLean in 1979
 
 
 [3]
 The "manifest" requirement is a judicial gloss on the statute, which does not expressly so provide. The rationale is that a latent condition, unknown to the employer, causes no loss of wage-earning capacity and presents no danger of discrimination against the handicapped. This court has created an exception to the "manifest" requirement for occupational diseases. Newport News Shipbuilding & Dry Dock Co. v. Harris, 934 F.2d 548, 550-551 (4th Cir.1991)
 
 
 [4]
 The Director argues that Lawson was eviscerated in Estate of Cowart v. Nicklos Drilling Co., 112 S.Ct. 2589 (1992), where the Court read the statute literally in deciding that a "person entitled to compensation" meant the same thing throughout the statute. The Cowart Court did not disavow Lawson, and this court recently recognized its continued vitality. DOWCP v. Newport News Shipbuilding & Dry Dock Co. [Harcum], 8 F.3d 175, 184 n. 8 (4th Cir.1993)
 
 
 [5]
 33 U.S.C. Secs. 908(c)(1)-(20)
 
 
 [6]
 33 U.S.C. Sec. 908(c)(21)
 
 
 [7]
 The parties cite four circuits that have adopted the "cautious employer" test. C & P Telephone Co. v. DOWCP, 564 F.2d 503 (D.C.Cir.1977); Atlantic & Gulf Stevedores, Inc. v. DOWCP, 542 F.2d 602 (3rd Cir.1976); Equitable Equipment Co. v. Hardy, 558 F.2d 1192 (5th Cir.1977); DOWCP v. Campbell Industries, Inc., 678 F.2d 836 (9th Cir.1982), cert. denied, 459 U.S. 1104 (1983), overruled in part on other grounds, DOWCP v. Cargill, Inc., 709 F.2d 616 (9th Cir.1983) (en banc). We have never decided whether this test is a proper interpretation of "disability." For today's purposes, we will assume without deciding that it is valid
 
 
 [8]
 The ALJ also found that, even if Browder had a preexisting partial disability, his 1984 injury was the "sole cause" of his total disability. The BRB did not address this matter because it affirmed the ALJ's finding that there was no preexisting partial disability. The Director urges the "sole cause" finding as an alternative basis to affirm. Because we affirm on the preexisting disability point, the Director's invitation need not be addressed. However, inasmuch as the Director cites contrary authority from other circuits, we should point out that we cannot, under the rule of SEC v. Chenery Corp., 318 U.S. 80 (1943), affirm a decision of the BRB on grounds not relied on by the BRB. Dayton v. Consolidation Coal Co., 895 F.2d 173, 175 (4th Cir.1990), rev'd on other grounds, Pauley v. BethEnergy Mines, 111 S.Ct. 2524 (1991)
 
 
 [9]
 In his initial decision, the ALJ found that, if Browder had a preexisting disability, it was manifest to McLean. He did not revisit this issue on modification, though the new proof offered by McLean focused on the possible existence of a latent, rather than manifest, condition