**Charles SPROULL, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Stevedoring Services of America; Eagle Pacific Insurance Company, Respondents.**

**STEVEDORING SERVICES OF AMERICA; Eagle Pacific Insurance Company, Petitioners,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Charles Sproull, Respondents.**

Nos. 94–70906, 94–70914.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 9, 1996.

Decided June 17, 1996.

---

■■■■■■■■■■■■■■■■■■■■■■■■

Charles Robinowitz, Portland, Oregon, for petitioner-respondent Charles Sproull.

John R. Dudrey, Williams, Fredrickson & Stark, Portland, Oregon, for petitioners-respondents Stevedoring Services of America and Eagle Pacific Insurance Company.

Samuel J. Oshinsky and Laura J. Stomski, Office of the Solicitor, United States Department of Labor, Washington D.C., for respondent Director, Office of Workers' Compensation Programs.

Before GOODWIN, SKOPIL and SCHROEDER, Circuit Judges.

**OPINION**

SKOPIL, Senior Circuit Judge:

Charles Sproull, a longshoreman, and his employer, Stevedoring Services of America (SSA), separately petition for review of a Benefits Review Board (Board) decision granting Sproull permanent partial disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950 (LHWCA). SSA also petitions for review of the Board's decision denying its claim against the Director of the Office of Workers' Compensation Program (Director) for special fund relief under 33 U.S.C. § 908(f), and the Board's assessment of a twenty percent penalty for late payment of interest due Sproull. We grant Sproull's petition, and grant in part and deny in part SSA's petition.

I.

Sproull was injured on January 10, 1985 when he fell and tore the rotator cuff tendon in his left shoulder. He was off work and received temporary total disability benefits until September 16, 1985. When Sproull returned to work he was limited to dock work

off the "old man's board" and could not work as he previously had at night or as a linesman, both of which offer a higher rate of pay. Consequently, Sproull claimed a loss of wage earning capacity and permanent partial disability benefits under the LHWCA.

A hearing on Sproull's claim was held before an Administrative Law Judge (ALJ) on January 26, 1986. The ALJ found Sproull entitled to permanent partial disability benefits, reasoning that Sproull's post-injury wage-earning capacity was less than his pre-injury average weekly wages. In addition, the ALJ denied SSA's request to offset Sproull's benefits with vacation and holiday pay SSA paid Sproull while he was receiving temporary total disability benefits. The ALJ did, however, grant SSA special fund relief under 33 U.S.C. § 908(f).

The Board affirmed the ALJ's finding that Sproull is entitled to benefits and the ALJ's denial of an offset. It reduced, however, the award of benefits, reasoning that the ALJ erred in calculating Sproull's pre-injury average weekly wages. The Board also reversed the ALJ's finding that SSA is entitled to special fund relief because SSA failed to produce medical opinions establishing that Sproull's current disability is contributed to by his prior hand injury. Finally, the Board assessed a twenty percent penalty against SSA pursuant to 33 U.S.C. § 914(f) for its late payment of interest due Sproull under the ALJ's order.

SSA and Sproull each petition for review of the Board's decision. Sproull contends that the Board erred by modifying the ALJ's calculation of his average weekly wages, thereby reducing his benefits. SSA contends that the Board erred by affirming the award of benefits and the denial of an offset. SSA also argues that the Board erred by reversing the ALJ's grant of special fund relief and by assessing the twenty percent penalty.

## II.

■ We review the Board's decisions for errors of law and adherence to the substantial evidence standard. *Brady–Hamilton Stevedore Co. v. Director, OWCP,* 58 F.3d 419, 421 (9th Cir.1995). The Board must accept the ALJ's findings of fact unless they are contrary to law, irrational or unsupported by substantial evidence in the record considered as a whole. 33 U.S.C. § 921(b)(3); *Brady–Hamilton,* 58 F.3d at 421. We give no special deference to the Board's interpretations of the LHWCA, but do defer to the Director's interpretations. *Port of Portland v. Director, Office of Workers Compensation Programs,* 932 F.2d 836, 838 (9th Cir.1991). Although we respect the Board's reasonable interpretations, the "distinction in the deference owed the Director and the Board is significant ... where their positions conflict with respect to the issues raised on appeal." *Metropolitan Stevedore Co. v. Brickner,* 11 F.3d 887, 889 (9th Cir.1993) (internal quotation omitted).

### A. Award of Benefits

Permanent partial disability benefits are intended to compensate an injured employee for loss of earning capacity, which is calculated by comparing the employee's post-injury "wage-earning capacity" with his pre-injury "average weekly wages." 33 U.S.C. § 908(c)(21). If the wage-earning capacity is less than the average weekly wages, the employee is entitled to disability benefits equal to two-thirds of the difference. *Id.*

■ We first address SSA's contention that Sproull is not entitled to disability benefits because his wage-earning capacity, as represented by his actual earnings, is greater than his average weekly wages. An employee's wage-earning capacity is determined by actual earnings only if these earnings "fairly and reasonably represent his wage-earning capacity." 33 U.S.C. § 908(h). Otherwise, the ALJ must determine an amount representing the employee's "reasonable" wage-earning capacity. *Id.* Here, the ALJ found that Sproull's actual wages are not a fair and reasonable measure of his post-injury earning capacity because wage rates increased approximately fifteen percent after Sproull was injured. The ALJ therefore reduced Sproull's post-injury actual earnings by fifteen percent and used this adjusted amount in determining benefits.

Substantial evidence exists in the record to support the ALJ's finding that Sproull's actu-

al earnings are not a fair and reasonable measure of his wage-earning capacity. The ALJ reasonably concluded that these earnings do not accurately project Sproull's loss of earning capacity because of an increase in wage rates. *See Brady–Hamilton*, 58 F.3d at 421. "A disabled worker's post-injury earnings can only 'fairly and reasonably represent his wage-earning capacity' ... if they have been converted to their equivalent at the time of injury." *LaFaille v. Benefits Review Bd.*, 884 F.2d 54, 61 (2d Cir.1989); *see also White v. Bath Iron Works Corp.*, 812 F.2d 33, 35 (1st Cir.1987) (ALJ may take into account wage increases when calculating wage-earning capacity). We therefore conclude that the Board did not err by affirming the ALJ's calculation of Sproull's wage-earning capacity.

■ We next address Sproull's contention that the Board erred by modifying the ALJ's calculation of his average weekly wages. Under 33 U.S.C. § 910(c), which the parties agree governs the calculation of Sproull's average weekly wages, the ALJ is directed to determine an amount which "reasonably represent[s] the annual earning capacity of the injured employee." This amount is then divided by fifty two, resulting in the employee's average weekly wages.

In this case, the ALJ included in the calculation of Sproull's average weekly wages the vacation pay Sproull earned in 1984, the calendar year prior to his injury, even though under the terms of the applicable collective bargaining agreement, Sproull did not receive this pay until April 1985, after the date of his injury. The April 1985 vacation pay was based on wage rates effective July 1, 1984. According to the ALJ, including Sproull's most recently earned vacation pay best reflects his future earning capacity had he not suffered the injury.

The Board reversed, concluding that the ALJ's reliance on vacation pay received after the date of the injury creates needless administrative problems. The Board reasoned that by including vacation pay received in 1984, even though earned in 1983, the parties and the ALJ would have been able to calculate more quickly the average weekly wages and resolve the disability claim. Although

administrative convenience may possibly be relevant in some circumstances, here there were never any issues of inconvenience, confusion or delay in payment as hypothesized by the Board. Rather the ALJ was able accurately and properly to calculate Sproull's average weekly wages. After carefully reviewing the record, we conclude that the ALJ's calculation of Sproull's average weekly wages reasonably represents his annual earning capacity. *See* 33 U.S.C. § 910(c). The Board therefore erred by reversing the ALJ's determination.

■ There is no merit to SSA's contention that the vacation pay Sproull received in April 1985 constitutes post-injury earnings which are typically excluded from an employee's average weekly wage. Sproull *earned* the April 1985 vacation wages before his injury, from January 1 to December 31, 1984. Nothing in the LHWCA prevents the ALJ from including in the average weekly wage wages earned before, yet received after, the employee's injury.

Finally, we reject SSA's contention that its liability to Sproull for disability benefits should be offset by the vacation and holiday pay which it paid Sproull while he was receiving temporary total disability benefits. According to SSA, Sproull was overcompensated during this time because he did not lose any wages for those days on which he received holiday and vacation pay. This argument, however, is flatly rejected by the terms of the collective bargaining agreement. Under that agreement, Sproull would have received both wages and holiday pay if he could have worked on the holidays. In addition, vacation pay is not based on an employee actually taking a vacation.

### B. *Special Fund Relief*

■ The LHWCA, 33 U.S.C. § 908(f), provides that where an employee is permanently disabled and the disability is found not to be caused solely by the injury incurred on the job, the employer's liability is limited to a maximum of 104 weeks, after which time liability is borne by the special fund established by 33 U.S.C. § 944. *E.P. Paup Co. v. Director, OWCP*, 999 F.2d 1341, 1352 (9th

Cir.1993). To establish entitlement to special fund relief, the employer must demonstrate:

(1) that the employee had an existing permanent partial disability prior to the employment injury; (2) that the disability was manifest to the employer prior to the employment injury; and (3) that the current disability is not due solely to the most recent inquiry.

*Id.* (internal quotations omitted).

■ SSA requested special fund relief under section 908(f) based on medical evidence that Sproull had earlier suffered a hand injury. The only issue on appeal is whether SSA established the third requirement, namely that Sproull's prior injury contributes to his current disability.

The ALJ found that Sproull's prior injury does contribute to his current shoulder injury, reasoning as follows:

Taking into consideration [Sproull's] testimony that in performing his work on the dock he has learned to use mostly his right arm and hand in handling slings, as well as the self-evident inter-relationship between the use of the hand, grip-strength and shoulder in his post-injury dock work, ... and the recency of his 1983 left hand injury immediately prior to returning to work before the 1985 left shoulder injury, I find that [Sproull] had a pre-existing permanent partial disability within the meaning of the Act prior to his 1985 shoulder injury, and that his permanent partial disability resulting after the 1985 injury is materially and substantially greater than would have resulted from the latter injury alone.

■ The Board reversed, reasoning that "there are no medical opinions of record stating that [Sproull's] current disability is contributed to by his prior hand injury." Nothing in the LHWCA, however, requires employers to submit "medical opinions" to establish the contribution requirement, and we decline to create such a requirement. Rather, we conclude that SSA was entitled to establish the contribution requirement by medical or *other* evidence. *See Director, OWCP v. Newport News Shipbuilding & Dry Dock Co.,* 8 F.3d 175, 185 (4th Cir.1993), *affirmed,* —— U.S. ——, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995); *Director, OWCP v. Luccitelli,* 964 F.2d 1303, 1306 (2d Cir.1992). The Board therefore erred by reversing the ALJ's grant of special fund relief.

## C. *Twenty Percent Penalty*

■ Finally, SSA appeals the Board's assessment of a twenty percent penalty for its late payment of interest due Sproull under the terms of the ALJ's compensation order. SSA paid the interest more than ten days after the order was filed. Under 33 U.S.C. § 914(f), "[i]f any compensation, payable under the terms of an award, is not paid within ten days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20 per centum thereof."

"Compensation" is defined in the LHWCA as "the money allowance payable to an employee or to his dependents as provided for in this chapter." 33 U.S.C. § 902(12). SSA argues that interest is not "compensation" because it is not expressly provided for in the LHWCA. The Director counters that interest is a necessary and inherent component of "compensation" because it ensures that the delay in payment of compensation does not diminish the amount of compensation to which the employee is entitled.

We recognized the necessity of imposing interest on the delayed payment of compensation benefits in *Foundation Constructors, Inc. v. Director, OWCP,* 950 F.2d 621, 625 (9th Cir.1991). In so doing, we deferred to the Director's interpretation that interest on past-due compensation serves the purposes of the LHWCA by fully compensating injured workers. *See also Sea–Land Service, Inc. v. Barry,* 41 F.3d 903, 910–11 (3d Cir. 1994) (following *Foundation* and imposing interest on delayed payment of compensation). In addition, we reasoned that "[a]llowing an employer to delay compensation payments interest-free would reduce the worth of such payments to the claimant, undermining the remedial intent of the Act." *Foundation,* 950 F.2d at 625. This reasoning is equally applicable here. We therefore defer to the Director's reasonable interpretation that interest is an inherent component of compensation and affirm the Board's imposi-

tion of a twenty percent penalty on SSA's late payment of interest.

### III.

The Board did not err by affirming the ALJ's calculation of Sproull's wage-earning capacity and the ALJ's denial of an offset to SSA, and by imposing a twenty percent penalty for SSA's late payment of interest. The Board did err by reversing the ALJ's calculation of Sproull's average weekly wage and the ALJ's grant of special fund relief to SSA.

**PETITION GRANTED in No. 94–70906; PETITION GRANTED in part and DENIED in part in No. 94–70914.** All sides to bear their own costs on appeal.