DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, etc.,
Petitioner, Cross–Respondent,

v.

BETHLEHEM STEEL CORPORATION,
Respondent, Cross–Petitioner,

and

Claude Brown, Cross–Respondent.

No. 87–4579.

United States Court of Appeals,
Fifth Circuit.

March 28, 1989.
As Amended April 17, 1989.

Joshua T. Gillelan, II and J. Michael O'Neill, U.S. Dept. of Labor, Office of Sol., Washington, D.C., for petitioner, cross-respondent.

Linda Meekins, Benefits Review Bd., U.S. Dept. of Labor, Washington, D.C., for other interested parties.

Robert D. Rapp, Mandell & Wright, Houston, Tex., for Claude Brown.

Louis M. Scofield, Jr., Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for Bethlehem Steel Corp.

Before GOLDBERG, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner/cross-respondent Director, Office of Workers' Compensation Programs (the Director) petitions for review of a final order of the Benefit Review Board of the Department of Labor (the Board) affirming in part, reversing in part, and modifying in part the order of the Administrative Law Judge (the ALJ) awarding benefits to

cross-respondent Claude Brown (Brown) under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950. The ALJ awarded Brown a total of 144 weeks' compensation for a fifty percent permanent partial disability in his left leg, 104 weeks of which was to be paid by respondent/cross-petitioner Bethlehem Steel Corporation (Bethlehem) and forty weeks of which was to be paid by the second injury fund established pursuant to 33 U.S.C. § 944. The ALJ also awarded Brown certain attorneys' fees and denied Bethlehem's request that it receive a credit against its liability to Brown based on the amounts that it had already paid to Brown for a previous injury resulting in a twenty percent permanent partial disability in his left leg. The Board affirmed the ALJ's decision to award Brown a total of 144 weeks' compensation and certain attorneys' fees. However, it reversed the ALJ's decision to deny Bethlehem a credit and modified the ALJ's order to allow Bethlehem a credit consisting of the actual dollar amounts that it had previously paid to Brown. Bethlehem cross-petitions for review of the Board's decision to base the credit against Brown's award on actual dollars paid rather than the percentage of injury sustained and its decision to allow Brown to recover certain attorneys' fees from Bethlehem. We affirm in part, reverse in part, and remand.

## Facts and Proceedings Below

In 1979, Brown injured his left leg while working as an employee of Bethlehem in one of its shipyards. As a result of this injury, Brown was left with a twenty percent permanent partial disability in his left leg. Bethlehem paid Brown compensation for this permanent partial disability in the amount of $17,276.54, which amount was based on a compensation period of 57.6 weeks (twenty percent of the maximum period of 288 weeks) and a compensation rate of $299.94 per week (two-thirds of Brown's then average weekly wage of $449.91). *See* 33 U.S.C. §§ 908(c)(2), 908(c)(19). In 1982, Brown injured his left leg again while working for Bethlehem. This second injury left Brown with a fifty percent permanent partial disability in his left leg. Bethlehem voluntarily compensated Brown for the additional thirty percent impairment of his leg in the amount of $26,583.55, which amount was based on a compensation period of 86.4 weeks (thirty percent of 288 weeks) and a compensation rate of $307.68 per week (two-thirds of Brown's average weekly wage at the time of the second injury of $461.51). *See* 33 U.S.C. §§ 908(c)(2), 908(c)(19).

Brown contended, however, that he was totally disabled and should be compensated accordingly or, in the alternative, that he was entitled to compensation for the entire fifty percent permanent partial disability and not simply for the additional thirty percent. Accordingly, he sought a hearing before the ALJ. The ALJ rejected Brown's contention that he was totally disabled, but he accepted Brown's alternative contention that he should be compensated for his entire fifty percent impairment. Citing *Strachan Shipping Company v. Nash*, 751 F.2d 1460 (5th Cir.1985), *modified en banc*, 782 F.2d 513 (1986), the ALJ determined that no credit for the compensation previously paid to Brown should be allowed against the 144 weeks' compensation due Brown on account of his fifty percent permanent partial disability. The ALJ also determined that Bethlehem was entitled to relief pursuant to 33 U.S.C. § 908(f). In accordance with this determination, the ALJ ordered that Bethlehem pay the first 104 weeks' compensation to Brown and that the second injury fund established pursuant to section 944 pay the remaining forty weeks' compensation, all at the rate of two-thirds of Brown's average weekly wage at the time of the 1982 injury of $461.51.

Brown appealed, challenging the ALJ's finding that his temporary total disability had changed to a scheduled permanent partial disability, but the Board affirmed that finding, *see Brown v. Bethlehem Steel Corp.*, 19 Ben. Rev. Bd. Serv. (MB) 200, 204–06 (1987), and it is no longer in issue. Bethlehem also appealed, contending that the amount of compensation due Brown for his fifty percent impairment should be re-

duced by an amount based upon the twenty percent impairment for which he had been previously compensated. Specifically, Bethlehem argued that the credit should be 57.6 weeks at the *current* (1982) compensation rate (representing twenty percent of the total 288–week period multiplied by the current compensation rate) rather than the actual dollar amount that it had previously paid Brown (57.6 weeks at the then prevailing—1979—compensation rate). The Board agreed with Bethlehem that the ALJ's award permitted an improper double recovery and that a credit for the compensation previously paid should be allowed. *See Brown*, 19 Ben. Rev. Bd. Serv. (MB), at 203. However, the Board disagreed with Bethlehem's proposed method for computing the credit and held that the credit for the past recovery should be based on the actual dollar amount of compensation previously paid for a preexisting disability rather than on a percentage of the disability for which compensation was previously received. *See id.* at 203–04. Under this method of computing the credit, Brown was entitled to $445.83 over and above the amounts that he had already received from Bethlehem voluntarily. Significantly, the Board also ruled that this credit should be applied first to Bethlehem's liability and not to the second injury fund's liability, with the result that the second injury fund had to pay Brown forty weeks' compensation, but Bethlehem had to pay only 104 weeks' compensation less the $17,276.54 that it had already paid to Brown. *See id.* at 205.

The Director, appearing in the case for the first time, sought rehearing on the ground that the Board's application of section 908(f) in conjunction with the credit for Brown's previous compensation was erroneous. Specifically, the Director argued that applying the credit to Bethlehem's liability first allowed Bethlehem to escape much of its liability for the second injury and, therefore, the credit should be applied

first to the second injury fund's liability. *See Brown v. Bethlehem Steel Corp.*, 20 Ben. Rev. Bd. Serv. (MB) 26, 28 (1987). The Board disagreed with the Director's argument. Characterizing the issue as "a novel [one] of how to apply both the credit doctrine and Section [908(f)] in the same case," the Board reasoned that its result "serves the dual purpose of avoiding a double recovery to claimant while rewarding employer for continuing to employ claimant" and in that sense is consistent with the purpose of section 908(f). *See Brown*, 20 Ben. Rev. Bd. Serv. (MB), at 28–29. Following the Board's denial of his motion for reconsideration, the Director filed a timely petition for review, and Bethlehem filed a timely cross-petition for review.

## Discussion

We must consider three issues in connection with this review. The first issue involves the interplay of three aspects of the law governing LHWCA compensation: the "aggravation rule," section 908(f), and the "credit doctrine." We have previously defined the aggravation rule as "a doctrine of general workers compensation law which provides that, where an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the entire resulting disability is compensable." *Strachan Shipping Company v. Nash*, 782 F.2d 513, 517 (5th Cir.1986) (en banc).[1] Section 908(f) represents an attempt to mitigate the harshness to the employer of the aggravation rule by providing in part that in the case of certain "scheduled" specific injuries resulting in permanent partial disability "the employer shall provide compensation for the applicable period of weeks provided for in [section 908(c)(1) to section 908(c)(20)] for the subsequent injury, or for 104 weeks, whichever is the greater."[2]

---

1. We have also stated that this rule "is well-grounded in the statutory language of the LHWCA as interpreted by this Court." *Nash*, 782 F.2d at 517.

2. The full text of section 908(f)(1) states as follows:

"In any case in which an employee having an existing permanent partial disability suffers injury, the employer shall provide com-

33 U.S.C. § 908(f)(1). Any amounts required to compensate the employee in excess of the employer's contribution are provided for by the second injury fund. *See id.* § 908(f)(2)(A). The purpose of this arrangement is to "enhanc[e] the employment prospects of handicapped workers by shielding employers from severe costs of compensating employees with prior disabilities." *Nash,* 751 F.2d at 1465. The credit doctrine is an extrastatutory doctrine that was "developed in a series of decisions by the Benefit[] Review Board as a limit on the aggravation rule in order to prevent double recoveries where the worker has been actually compensated for a disability to the same [bodily] member at a previous point in time." *Nash,* 782 F.2d at 518. The question presented here involves who receives the benefit of the credit in a situation in which both section 908(f) and the credit doctrine are arguably applicable: the employer or the second injury fund?

Bethlehem argues that after the liabilities to the employee of the employer and of the second injury fund are apportioned pursuant to section 908(f), the credit should be applied first to the employer's share of the liabilities because that would further the purpose of section 908(f) by encouraging employers to hire handicapped workers. The Director argues for a fund-first rather than an employer-first rule,[3] stating that the purpose of section 908(f) is not so much to provide *positive* incentives to employers to hire handicapped workers, but is rather to ameliorate the severe effects on the employer of the aggravation rule and in that way to mitigate the disincentive to the hiring of handicapped workers which the aggravation rule would otherwise produce.

■ We agree with the Director for two basic reasons. First, unlike the employer-first rule espoused by Bethlehem, the fund-first rule advocated by the Director is consistent with the express language of section 908(f)(1). Section 908(f)(1) clearly contemplates that, at the very least, the employer will compensate the employee for the entire second injury. Under the Director's rule, the employer will always pay at least the amount that is related to the second injury. However, under Bethlehem's rule, in many situations the employer would actually pay less than the compensation due for the second injury *alone.*

pensation for such disability as is found to be attributable to that injury based upon the average weekly wages of the employee at the time of the injury. If following an injury falling within the provisions of subsection (c)(1)-(20) of this section, the employee is totally and permanently disabled, and the disability is found not to be due solely to that injury, the employer shall provide compensation for the applicable prescribed period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater, except that, in the case of an injury falling within the provisions of subsection (c)(13) of this section, the employer shall provide compensation for the lesser of such periods. In all other cases of total permanent disability or of death, found not to be due solely to that injury, of an employee having an existing permanent partial disability, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation payments or death benefits for one hundred and four weeks only. If following an injury falling within the provisions of subsection (c)(1)-(20) of this section, the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater, except that, in the case of an injury falling within the provisions of subsection (c)(13) of this section, the employer shall provide compensation for the lesser of such periods.

"In all other cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide in addition to compensation under subsections (b) and (e) of this section, compensation for one hundred and four weeks only."

3. Under a fund-first rule, the credit would be applied against the total recovery first and then the liabilities would be allocated pursuant to section 908(f). Alternatively, the liabilities would be allocated and then the credit would be applied to the second injury fund's share first and to the employer's share second. The result under either method is the same.

Indeed, on the facts involved in the present case, if we adopted the employer-first rule, Bethlehem would only be required to pay, depending on how the credit is calculated, $14,722.18 or $14,276.35, either of which sum is substantially less than the $26,583.55 that Brown should receive for the second injury alone.

Second, we believe that the Director's rule fits more closely with the congressional purpose in enacting section 908(f). The House Report describing the 1972 amendments to the LHWCA explained the 104–week provision as follows:

"Many employers have an inaccurate impression regarding the liabilities for workmen's compensation when they employ handicapped workers. It is unfortunately a widespread belief that an employer is subjected to burdensome compensation costs where a handicapped worker receives an injury at the new place of employment. The provision in the bill makes clear that the employer's responsibility for the subsequent or second injury is limited to the scheduled award for the second injury or 104 weeks, whichever is greater. The remaining obligation to pay that employee where he is totally or partially disabled will fall upon the special funds existing under Section 44 of the Act. This method of spreading the risk among all employers is intended by the committee to encourage the employment of handicapped workers." H.R.Rep. No. 1441, 92d Cong., 2d Sess. 9, *reprinted in* 1972 U.S. Code Cong. & Ad.News 4698, 4705–06.

This passage clearly shows that section 908(f) is not intended to cause employers to *prefer* disabled workers over able-bodied ones, but rather to "enhanc[e] the employment prospects of handicapped workers by

shielding employers from severe costs of compensating employees with prior disabilities." [4] *Nash,* 751 F.2d at 1465. Accordingly, we hold that where an injury falling within the provisions of section 908(c)(1) to section 908(c)(20) materially increases a preexisting permanent partial disability of an employee and where the compensation due the employee on account of the overall resulting impairment exceeds 104 weeks' compensation, then whenever a credit for previous compensation paid is available to offset the amount due the employee, that credit shall first reduce the total award before there is any allocation of liabilities under sections 908(f)(1) and 908(f)(2).

The second issue under review is whether the credit that is allowed against the total award so as to prevent a double recovery should be based on the actual dollar amount previously paid or on the percentage of injury which the previous payment compensated.[5] Bethlehem argues that the percentage of injury method should be used to compute the credit on the ground that the statutory scheme for *scheduled* injuries in the LHWCA has as its purpose not compensation for lost earnings or earning capacity, but rather compensation for impairment or loss of use. Brown challenges this argument, contending that the amount of the credit should be based on the actual amount of money that was previously paid for the earlier injury because this is the only method that consistently prevents double recoveries.

We believe the latter approach is preferable for three reasons. First, using an actual dollars approach rather than a percentage of injury approach is consistent with 33 U.S.C. § 903(e), which was added in 1984 and uses an actual dollars approach in statutorily applying the credit doctrine to

---

4. In a 1984 amendment to section 908(f)(1), Congress provided that with respect to losses of hearing, the applicable compensation period shall be the number of weeks related to the subsequent injury or 104 weeks, whichever is *less, see* 33 U.S.C. § 908(f)(1), suggesting that Congress knows how to provide positive incentives *to* employers *to* hire the handicapped when it wishes to.

5. Under the percentage of injury method, the amount of the credit is computed by taking the percentage of permanent partial disability for which the claimant has previously received payment and multiplying that figure by the applicable compensation period and the current compensation rate. On the facts of the present case, that method would yield a credit of $17,722.37, which is obtained by multiplying twenty percent by 288 weeks by the current (1982) compensation rate of $307.68.

sums paid under certain other workers' compensation programs and under the Jones Act.[6] In our view, nothing would be gained by adopting an approach that is inconsistent with the one chosen by Congress to deal with a virtually identical situation. Second, computing the credit according to the actual dollars paid is simpler and more efficient and in that sense is more consistent with the aims of workers' compensation programs generally. Finally, using the actual dollars approach rather than the percentage of injury approach accords with the reality attending most informal settlements of claims, in which the matter that is actually under negotiation is how much money will change hands, not what the percentage of permanent partial disability, if any, is. We therefore hold that in determining the credit to be allowed against the total award, the amount of the credit shall be the actual dollar amount of payment that was previously made and not an amount based on the percentage of injury for which the claimant was previously compensated.[7]

### Conclusion

For the reasons stated above, we hold that the Board's decision to allow Bethlehem the benefit of the credit after allocating liabilities pursuant to section 908(f) was erroneous as a matter of law, but that the Board's decision with respect to the amount of the credit was proper. For the reasons stated in note 7, *supra*, we decline to disturb the award of attorneys' fees. We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

6.  Section 903(e) provides:
    "Notwithstanding any other provision of law, any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under this chapter pursuant to any other workers' compensation law or section 688 of Title 46 (relating to recovery for injury to or death of seamen) shall be credited against any liability imposed by this chapter."

7.  The third issue concerns the propriety of awarding Brown certain attorneys' fees totaling $11,875.97. Although we consider these fees to

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

be manifestly disproportionately large in relation to the benefits secured through this litigation, *i.e.,* an additional $445.83 to Brown, Bethlehem did not challenge these fees as unreasonable in the proceedings below. Furthermore, Bethlehem conceded at oral argument that if this Court determined that the actual dollars approach rather than the percentage of injury approach was correct, then it did not have any basis to reverse the award of attorneys' fees to Brown. Accordingly, albeit with reluctance, we decline to reverse the award of these attorneys' fees to Brown.