Walter G. BLANCHETTE and Warren D. Wilcox, Claimants,

General Dynamics Corporation, Petitioner,

v.

OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

Nos. 251, 708, Dockets 92–4084, 92–4086.

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1992.

Decided July 2, 1993.

Norman P. Beane, Jr., Boston, MA (Diane M. Broderick, Murphy & Beane, Boston, MA, of counsel), for petitioner.

Joshua Gillelan, U.S. Dept. of Labor, Washington, DC (Marshall J. Breger, Sol. of Labor, Carol A. De Deo, Associate Sol., Janet R. Dunlop, Counsel for Longshore, Marianne Demetral Smith, Attorney, Office of Sol., U.S. Dept. of Labor, Washington, DC, of counsel), for Respondent.

Before: KEARSE, MINER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner General Dynamics Corporation ("General Dynamics") brings these petitions to review decisions and orders of the Benefits Review Board of the United States Department of Labor (the "Board") issued March 25 and March 27, 1992 that awarded compensation benefits to claimants Walter G. Blanchette and Warren D. Wilcox pursuant to the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1988).[1] These decisions and orders granted relief from full compensation liability to General Dynamics pursuant to § 908(f) on the basis of claimants' preexisting disabilities, reduced claimants' total compensation by the amounts paid by General Dynamics on previous hearing loss claims by these employees, and credited the amounts paid on the previous claims to a special fund established pursuant to § 944 (the "Special Fund"),[2] rather than to General Dynamics.

General Dynamics' petitions for review raise the issue whether the Special Fund or General Dynamics is entitled to the credit against liability for compensation paid by General Dynamics for previous work-related hearing loss claims. Neither Blanchette nor Wilcox has any stake in this appeal. We conclude that within the narrow confines of the issue presented to this Court in the petitions for review, the Board did not abuse its discretion in crediting the Special Fund with the amounts paid by General Dynamics on the previous hearing loss claims. We accordingly deny the petitions for review.

## Background

Blanchette began working in the machinery maintenance department of the Electric Boat division of General Dynamics in Groton, Connecticut on October 19, 1956. A preemployment audiogram showed that prior to his employment with General Dynamics, Blanchette did not suffer from any hearing impairment. Blanchette was exposed to loud noises in his employment. On September 16, 1980, an audiogram revealed that he had a 31.5% binaural hearing impairment. He filed a claim under the LHWCA seeking compensation from General Dynamics for that hearing loss. In October 1981, General Dynamics voluntarily paid Blanchette $9,500.00 in compensation for that loss. This settlement was not formally approved by a deputy commissioner or administrative law judge ("ALJ"). See § 908(i).[3]

---

1. All statutory references herein are to the LHWCA as codified in the 1988 United States Code, unless otherwise specified. The Board is established by § 921(b) "to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under [the LHWCA]." § 921(b)(3).

2. As will appear, see infra note 5, § 908(f)(1) limits employer liability in certain cases where an employment-related injury is not the sole cause of an employee's disability, and § 908(f)(2)(A) provides that in such cases the Special Fund will pay the compensation of which the employer is relieved. Section 944(a) establishes the Special Fund in the Treasury of the United States, to be held in trust for fulfillment of

its statutory purposes; § 944(c) provides for it to be funded primarily by contributions from carriers and self-insurers that are subject to the LHWCA upon assessment by the Secretary of the Treasury in accordance with a statutory formula; and § 944(i) authorizes payments therefrom to satisfy obligations imposed upon the Special Fund by § 908(f)(2)(A) and other provisions of the LHWCA.

3. Section 908(i), prior to 1984, provided in part:

(A) Whenever the deputy commissioner determines that it is in the best interests of an injured employee entitled to compensation, he may approve agreed settlements of the interested parties, discharging the liability of the employer for such compensation. . . .

Blanchette continued working for General Dynamics and was further exposed to loud noise. On October 2, 1988, he filed a second claim alleging an additional hearing loss. An audiogram performed on October 12, 1988 revealed that Blanchette had a binaural hearing impairment of 33.85%. After a hearing held on February 13, 1990, an ALJ found that Blanchette's hearing loss was due, at least in part, to his exposure to ambient noise at work, and awarded Blanchette benefits of $26,025.91 for the total 33.85% hearing loss under § 908(c)(13) and (19).[4] The ALJ granted General Dynamics relief under § 908(f) from liability for the full compensation amount on the basis that Blanchette had a preexisting permanent partial disability, the previously compensated 31.5% hearing loss, of which General Dynamics was aware.[5] In addition, the ALJ ruled that Blanchette's compensation of $26,025.91 should be reduced by the $9,500.00 previously paid by General Dynamics to prevent a double recovery by Blanchette. The ALJ determined that this $9,500.00 credit applied to the liability of the Special Fund, rather than that of

General Dynamics. Accordingly, General Dynamics was directed to compensate Blanchette pursuant to the statutory formula, *see supra* note 4, for a 2.35% hearing loss, and the Special Fund was required to provide compensation for the remaining 31.5% hearing loss, but was credited with the prior $9,500 payment by General Dynamics.

Wilcox began working for the Electric Boat division of General Dynamics in November 1957 as a rigger's helper. He retired from the shipyard on February 21, 1989. General Dynamics concedes that Wilcox did not have a hearing impairment when he was hired. From 1958 to 1973, Wilcox worked as a rigger, a position in which he was exposed to loud noises. In 1973, Wilcox became a nuclear quality control inspector, also a position in which he was exposed to such noise. In 1984, Wilcox filed a claim under the LHWCA seeking compensation from General Dynamics for a hearing loss, and in November 1985, General Dynamics voluntarily paid

---

33 U.S.C. § 908(i) (1982). Section 908(i) was amended in 1984. It now provides in part:

(1) Whenever the parties to any claim for compensation under this chapter ... agree to a settlement, the deputy commissioner or administrative law judge shall approve the settlement within thirty days unless it is found to be inadequate or procured by duress.... No liability of any employer ... shall be discharged unless the application for settlement is approved by the deputy commissioner or administrative law judge. If the parties to the settlement are represented by counsel, then agreements shall be deemed approved unless specifically disapproved within thirty days after submission for approval.

.     .     .     .     .

(3) A settlement approved under this section shall discharge the liability of the employer.... Settlements may be agreed upon at any stage of the proceeding including after entry of a final compensation order.
33 U.S.C. § 908(i) (1988).

4.  Awards are made under subsection (c) of § 908 for permanent partial disability, and are in addition to any award under subsection (b) for temporary total disability or subsection (e) for temporary partial disability. Subsection (c) awards are "66⅔ per centum of the [claimant's] average weekly wages" for a specified number of weeks, depending upon the disability. Section 908(c)(13) provides in part:

Loss of hearing:
(A) Compensation for loss of hearing in one ear, fifty-two weeks.
(B) Compensation for loss of hearing in both ears, two-hundred weeks.
Section 908(c)(19) provides:
Partial loss or partial loss of use: Compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member.

5.  Section 908(f)(1) provides in part:
If following an injury falling within the provisions of subsection (c)(1)–(20) of this section, the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide compensation for the applicable period of weeks provided for in that section for the subsequent injury, or for one hundred and four weeks, whichever is the greater, except that, in the case of an injury falling within the provisions of subsection (c)(13) [hearing loss] of this section, the employer shall provide compensation for the lesser of such periods.
Section 908(f)(2)(A) provides in part:
After cessation of the payments for the period of weeks provided for herein, the employee ... shall be paid the remainder of the compensation that would be due out of the special fund established in section 944 of this title....

him $4,141.13 in compensation for a 6.25% binaural hearing loss.[6]

Wilcox continued working for General Dynamics. In 1988, he filed a second claim that alleged an additional work-related hearing loss. General Dynamics and Wilcox stipulated that Wilcox had a 24.2% binaural hearing impairment. After a hearing held on December 14, 1989, an ALJ found that Wilcox' hearing loss arose, at least in part, from his work, and awarded Wilcox benefits for the full 24.2% hearing loss under § 908(c)(13) and (19). *See supra* note 4. The ALJ granted General Dynamics relief under § 908(f) on the ground that Wilcox had a preexisting permanent partial disability, the previously compensated 6.25% hearing loss, of which General Dynamics was aware. The ALJ found the Special Fund liable for the preexisting 6.25% hearing loss, and General Dynamics liable for the additional 17.95% hearing loss. In addition, the ALJ held that Wilcox' compensation should be reduced by the $4,141.13 previously paid by General Dynamics on the first claim, and that the credit should be applied to the liability of the Special Fund.

General Dynamics appealed both decisions to the Board pursuant to § 921(b)(3), *see supra* note 1, contending that the ALJs erred in allowing the Special Fund, rather than General Dynamics, to receive the credits against liability. The Board affirmed the ALJs' decisions and orders, reasoning that if General Dynamics were granted the credit, it would avoid paying any compensation for the second injury in the case of Blanchette, or the full amount attributable thereto in the

case of Wilcox. General Dynamics filed timely petitions for review pursuant to § 921(c),[7] and subsequently filed a motion to consolidate the cases, which this Court granted.

## Discussion

The LHWCA is a workers' compensation statute that provides death and disability benefits for maritime workers injured on the job. *See* § 903(a). We noted in *Director, OWCP v. General Dynamics Corp. ("Krotsis"),* 900 F.2d 506, 508 (2d Cir.1990), *overruled in part on other grounds by Director, OWCP v. General Dynamics Corp. ("Bergeron"),* 982 F.2d 790, 793–95 (2d Cir.1992), that four rules of law interact in cases dealing with LHWCA claims for aggravated injuries: (1) the "aggravation rule"; (2) § 908(f); (3) the "credit doctrine"; and (4) § 914(j).

Under the aggravation rule, which is derived from the language of the LHWCA, *see Krotsis,* 900 F.2d at 508 (citing *Strachan Shipping Co. v. Nash,* 782 F.2d 513, 517 (5th Cir.1986) (in banc) (deriving aggravation rule from §§ 903, 902(10), and 908(f))), " 'where an employment injury worsens or combines with a preexisting impairment to produce a disability greater than that which would have resulted from the employment injury alone, the *entire* resulting disability is compensable.' " *Id.* (quoting *Strachan,* 782 F.2d at 517) (emphasis added in *Krotsis* ). This rule standing alone, however, would create a disincentive for employers to hire or retain handicapped workers. *Id.; see also Di-*

---

6. The Board's decision and order states that "[t]here is no evidence of record indicating that this was a settlement pursuant to ... § 908(i)." *See supra* note 3. The ALJ's decision and order recites a stipulation of the parties and consequent finding of the ALJ that General Dynamics "has paid $7,500.00, pursuant to [§ 908(i) ], for a settlement of a prior hearing loss claim," but then credits General Dynamics with only a $4,141.13 prior payment in its order directing relief. General Dynamics' brief on appeal states that as a result of the filing of Wilcox' initial claim: "Without further adjudication, ... [General Dynamics] *voluntarily paid* [Wilcox] $4,141.13, 'by agreement [of] counsel,' for a 6.25% binaural hearing loss." We conclude that the prior payment was in the amount of $4,141.13, and was not approved pursuant to § 908(i).

7. Section 921(c) provides in part:

Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside.... Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

*rector, OWCP v. Luccitelli,* 964 F.2d 1303, 1304 (2d Cir.1992) (relying on *Krotsis,* 900 F.2d at 508). In recognition of this problem, Congress enacted § 908(f) and the Board created the credit doctrine. *Krotsis,* 900 F.2d at 508.

██ Under § 908(f)(1), when an employee makes a claim for a permanent partial hearing impairment that is not solely due to the injury that prompts the claim, the employer is liable to the employee for compensation for the lesser of: (1) the number of weeks corresponding to the degree of the additional work-related hearing loss; or (2) 104 weeks.[8] The Special Fund pays the remainder of the compensation due to the employee for that injury. *See* § 908(f)(2)(A), *supra* note 5.

██ The credit doctrine affects the impact of the aggravation rule, and is "an extra-statutory doctrine developed by the [Board] to prevent double recoveries when a worker has already been compensated for an existing disability." *Krotsis,* 900 F.2d at 509. Under this doctrine, prior compensation for a disability is credited against the compensation due for a pending claim for that disability as further aggravated. *Id.* Thus, when an employee receives compensation for a work-related hearing loss and later brings a claim that the hearing loss has worsened, the aggravation rule permits the employee to claim compensation for the entire hearing loss, but the credit doctrine requires deduction of the previous compensation received from the compensation due on the full hearing loss claim. *See id.* (citing *Strachan,* 782 F.2d at 518–22).

A final pertinent rule of law is stated in § 914(j), which provides: "If the employer has made advance payments of compensation, he shall be entitled to be reimbursed out of any unpaid installment or installments of compensation due."

██ In this case, the Board ruled, and the Director contends on appeal, that § 908(f) applies, but the Special Fund is entitled to be credited with General Dynamics' payments on the prior hearing loss claims by Blan-

chette and Wilcox. General Dynamics agrees that § 908(f) applies, but argues that under our decision in *Krotsis* the credit should be applied to the employer's liability, stressing that this allocation would further the purpose of § 908(f) to encourage employers to retain handicapped workers. The Director maintains that allocation of the credit to the Special Fund comports with *Krotsis,* properly understood, and that this interpretation is more consistent with the language and intent of § 908(f) that the employer should compensate the employee for the entire second injury.

We held in *Bergeron* that the Director's reasonable interpretations of the LHWCA are entitled to deference. 982 F.2d at 793–95. General Dynamics contends, however, that our decision in *Krotsis* controls the case before us because we held in *Krotsis* that a previous voluntary payment by an employer on a hearing loss claim was to be credited against the employer's subsequent liability for a claim of a further aggravated hearing loss. We therefore must determine first whether our decision in *Krotsis* mandates the holding urged by General Dynamics. If it does not, we must then determine whether the Director's interpretation of the applicable statutes is reasonable.

### A. *Applicability of Krotsis.*

In *Krotsis,* the claimant had a 63.33% hearing loss, 56.9% of which occurred prior to his employment by General Dynamics. 900 F.2d at 507–08. Krotsis made an initial claim for hearing loss, on which General Dynamics paid $16,179.47, but the payment was not approved pursuant to § 908(i) (*see supra* note 3). *Krotsis,* 900 F.2d at 507. Krotsis thereafter brought a second claim for hearing loss. The ALJ found the Special Fund liable for Krotsis' preemployment hearing loss, General Dynamics responsible for his postemployment loss, and General Dynamics entitled to be credited with its payment on Krotsis' initial claim. *Id.* at 508. The Director appealed to the Board, which affirmed the ALJ's decision. *Id.* The Director then

---

8. For scheduled losses other than a hearing loss, the employer is liable for the *greater* of 104 weeks compensation or the amount of compensation corresponding to the work-related injury. *See* § 908(f)(1), *supra* note 5.

filed a petition for review in this court. We denied the petition for review and affirmed the decision of the Board. *Id.* at 512.

In doing so, we described the Board's decision as follows:

> The Board found that Krotsis' 1979 claim remained open, and that it had "merged" into the 1983 claim since it had never been adjudicated and no order resolving it had ever been issued. The Board held that when Krotsis filed his 1983 claim, the disability for which he had made a claim in 1979 was subsumed by the later claim for 63.33 percent hearing loss (56.9 percent pre-existing hearing loss and 6.4 percent work-related hearing loss). In effect, the Board's holding eliminated the 1979 claim, leaving only the 1983 claim extant. Having done so, the Board then characterized General Dynamics' payment of $16,179.47 in 1980 as a "voluntary payment of compensation in advance of an award," pursuant to § 914(j).

*Id.* at 510–11.

We approved this analysis, stating: "General Dynamics' [initial] payment was voluntary and made outside of the scope of the [LHWCA]." *Id.* at 511. We also note that in other employment-related hearing loss cases, the Board has approved the practice of merging open hearing loss claims with later claims by upholding ALJ determinations to that effect. *See, e.g., Balzer v. General Dynamics Corp.,* 22 Ben.Rev.Bd.Serv. (MB) 447, 450 (Sept. 21, 1989) (per curiam) (where employer made payment on 1979 hearing loss claim that did not constitute § 908(i) settlement, ALJ "could properly treat the 1979 claim and 1984 claim [for hearing loss] as one"), *reconsideration en banc denied,* 23 Ben.Rev.Bd.Serv. (MB) 241, 242 n. 2 (May 16, 1990) (ALJ "properly treated claimant's 1979 and 1984 claims as one, as the 1979 claim was never adjudicated"); *Spear v. General Dynamics Corp.,* No. 89–3762, 1991 WL 335139, at * 1 (BRB Dec. 26, 1991) (per curiam) (upholding ALJ's decision to merge employee's hearing loss claims pursuant to *Krotsis,* "which held that where a claim is filed and not adjudicated, it remains open until an order issues, and that since the claims were for the same injury—hearing loss due to noise exposure—the pending claims merge into one claim for which one award is payable").

In the present case, however, the ALJs did not merge the claims even though the initial payments by General Dynamics to Blanchette and Wilcox were not approved pursuant to § 908(i) (*see supra* note 6 regarding the payment to Wilcox). Nor did the Director press for the claims to be merged before the Board or in a cross-petition for review by this Court. Had the issue been properly presented to us, we would probably have approved merger of the claims on the basis that without an approved settlement pursuant to § 908(i), the initial hearing loss claims were still open.

Despite the conclusion in *Krotsis* that the initial payment was voluntary and made outside of the scope of the LHWCA, § 908(f) was nonetheless applicable because Krotsis had some hearing loss before he began working for General Dynamics, and therefore he had a partial disability prior to the injury on which he based his claim against General Dynamics. Accordingly, Krotsis' permanent partial disability was "not ... due solely to" the injury inflicted by the excessive noise at his workplace, and was "materially and substantially greater" as a result of the preexisting disability. § 908(f)(1), *supra* note 5. In this case, by contrast, if the successive claims submitted by Blanchette and Wilcox were deemed to be merged into single claims, following *Krotsis,* no basis would exist for the application of § 908(f)(1) because neither Blanchette nor Wilcox had a hearing loss prior to the injury on which each merged claim is based. Specifically, their permanent partial disabilities would be "due solely" to their workplace exposure, precluding application of § 908(f)(1). Thus, General Dynamics would be solely responsible for the merged, single claim in each instance, and, § 908(f)(1) being inapplicable, the Special Fund would have no liability under § 908(f)(2)(A). *See supra* note 5. General Dynamics would be entitled to a credit for its prior payments to Blanchette and Wilcox, pursuant to § 914(j).

These claims come to us, however, in the posture of second injury claims, and because the Director has not cross-petitioned that

determination, we deal with them as such, rather than as merged claims. *See, e.g., Strachan Shipping Co.,* 782 F.2d at 520 n. 12 (reviewing court is not called upon to examine which construction of the credit doctrine furthers the aims of the LHWCA where party that would benefit from determination did not file cross-petition); *Bath Iron Works Corp. v. White,* 584 F.2d 569, 573 n. 2 (1st Cir.1978) (claimant who failed to file cross-petition precluded from attacking Board's decision in attempt to enlarge claimant's rights thereunder). Accordingly, we address only the question posed to us in the petitions for review: who receives the benefit of a credit, the employer or the Special Fund, where an employee previously received compensation for a work-related hearing loss and then brings a second claim, alleging that the hearing loss has worsened?

General Dynamics contends that *Krotsis* is controlling with respect to claims presented in this posture as well, and that under *Krotsis,* it is entitled to credits for its previous payments to Wilcox and Blanchette. In *Krotsis,* however, General Dynamics prevailed before the Board in having a prior payment applied in reduction of its liability for a subsequent claim by the same employee for an aggravated hearing loss "as a 'voluntary payment of compensation in advance of an award,' pursuant to § 914(j)." 900 F.2d at 511 (quoting Board decision in *Krotsis* ). On those facts, we viewed "the primary issue on appeal ... not [as] whether the Board properly applied the credit doctrine, but [rather as] whether it properly found that General Dynamics' [initial] payment ... was a payment of compensation in advance of an award for Krotsis' [second] claim." *Id.* In affirming the Board's ruling, we stated that there was a "crucial distinction" between *Krotsis* and *Director, OWCP v. Bethlehem Steel Corp. ("Brown"),* 868 F.2d 759 (5th Cir.1989), in which the Fifth Circuit credited a prior payment by an employer to the Special Fund's liability. *Krotsis,* 900 F.2d at 511. The distinction was that Brown did not have a preemployment disability, and the previous payments made by Bethlehem Steel had accordingly been "compensation for entirely work-related injuries." *Id.* In *Krotsis,* by contrast, the claimant's total hearing loss was 63.33%, of which 56.9% (for which the Special Fund was liable) occurred prior to his employment by General Dynamics, and only 6.4% was employment-related. *See id.* at 507–08.

The same distinction applies here—with the present case falling on the *Brown* side of the divide. As in *Brown,* neither Blanchette nor Wilcox had a preemployment disability, and the payments General Dynamics previously made to them were compensation for hearing losses suffered on the job. We are not faced here with the possibility that General Dynamics could be liable for a disability that is not work-related. Accordingly, our holding in *Krotsis* does not control the outcome in the present case.

B. *Reasonableness of the Director's Interpretation.*

We next turn to the issue of the reasonableness of the Director's interpretation of the LHWCA to provide that credit for previous payments by General Dynamics in this case should be applied first to the liability of the Special Fund. We conclude that the Director's interpretation is reasonable.

First, the Director's interpretation "is consistent with the express language of section 908(f)(1)." *Brown,* 868 F.2d at 762. The requirement in § 908(f)(1) that "the employer shall provide compensation for the applicable period of weeks" indicates to us, as it did to the Fifth Circuit, that Congress intended the employer to compensate the disabled employee for the *entire* second (work-related) injury. *See Brown,* 868 F.2d at 762. This intention would be thwarted in the present case if, as General Dynamics argues, its initial payments to Blanchette and Wilcox were applied as a credit against its liability for the injuries that resulted in their second claims. General Dynamics obtained all the relief that was appropriate for its prior payments by having those payments reduce the total awards due on the claims of Blanchette and Wilcox.

Further, the Director's interpretation is consistent with an approach to the Special Fund discussed by the House Committee on Education and Labor in its report on the

Longshore and Harbor Workers' Compensation Act Amendments of 1984. *See* H.R.Rep. No. 570, 98th Cong., 2d Sess., pt. 1, at 20, *reprinted in* 1984 U.S.C.C.A.N. 2734, 2753. The Committee "note[d] with dismay the burgeoning and uncontrolled growth in the utilization of the Special Fund," and stated its belief that "the unrestrained growth of the Special Fund's obligations can best be brought into control by increasing the employers' financial stake in claims which present potential Special Fund obligations." *Id.* The Director's interpretation in the instant case does not increase the employer's financial stake, but it does ensure that the employer pays the full stake specified in § 908(f).

General Dynamics argues that the Director's analysis confounds the purpose and intent of § 908(f) because employers will shy away from settling claims and will be less likely to retain injured workers. We do not agree. If General Dynamics were not considered to have settled Blanchette's and Wilcox' earlier claims, it would be required under *Krotsis* to compensate both claimants for their full hearing losses now as single work-related injury claims for which there is no § 908(f) relief. Thus, General Dynamics is not penalized for previously compensating or for retaining these two employees. Nor does an employer have any option to discharge an employee as a result of an initial LHWCA claim. *See* § 948a ("It shall be unlawful for any employer ... to discharge ... an employee ... because such employee has claimed or attempted to claim compensation from such employer....").

Whether by application of the credit doctrine or the rule of § 914(j), employers are protected against double payments to an employee for an overall disability. The policy of § 908(f) does not call for further protection of the employer in the case of a disability resulting exclusively from a work-related injury. This is the distinction between *Brown* and *Krotsis* that we articulated in *Krotsis,* and the Director's adoption of that view by allocating the credits for General Dynamics' initial payments of $9,500 (Blanchette) and $4,141.13 (Wilcox) to the Special Fund was reasonable.

Conclusion

The petitions for review are denied; the orders of the Board challenged by the petitions are affirmed.