STEVEDORING SERVICES OF AMERICA; Eagle Pacific Insurance Company, Petitioners,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Container Stevedoring Company, Respondents.

U.S. Department of Labor, Petitioner,

v.

Clarici Benjamin, as Administratrix of the Estate of James Benjamin; Container Stevedoring Company; Eagle Pacific Insurance Company, Respondents.

Nos. 01–70354, 01–70361.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 17, 2002

Filed July 30, 2002

Roger A. Levy and Mia C. Perachiotti–Germack, Laughlin, Falbo, Levy & Moresi, San Francisco, CA, for Stevedoring Services of America and Eagle Pacific Insurance Company.

Andrew D. Auerbach and Joshua T. Gillelan II, Office of the Solicitor of Labor, Washington, DC, for the Director, Office of Workers' Compensation Programs.

Frank B. Hugg, San Francisco, CA, for Container Stevedoring Company.

* Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

Before: HUG and BERZON, Circuit Judges and LASNIK,* District Judge.

LASNIK, District Judge.

Stevedoring Services of America ("SSA") and Eagle Pacific Insurance Co. petition for review of a decision of the United States Department of Labor Benefits Review Board ("BRB" or the "Board"). The decision awarded permanent partial disability benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA" or the "Act") to James Benjamin ("Benjamin") for a 34 percent hearing loss sustained during his employment. The Director, Office of Workers' Compensation Programs ("Director") cross-appeals the decision. An Administrative Law Judge ("ALJ") found that two employers, SSA and Container Stevedoring Company ("Container") had exposed Benjamin to injurious noise levels. The ALJ then merged the claims against the two employers and found that SSA was liable under the "last employer doctrine" as explicated by the Ninth Circuit. The BRB affirmed the ALJ's decision on January 5, 2001. We have jurisdiction pursuant to 33 U.S.C. § 921(c), and we reverse and remand.

**BACKGROUND**

Benjamin worked as a longshoreman from 1969 to 1992. Like other workers in the stevedoring industry, Benjamin did not have a single long-term employer but was assigned through a union hall. Toward the end of his career, he realized he was developing hearing problems and consulted his doctor. On January 9, 1991 he underwent an audiogram. On February 4, 1991, a follow-up audiogram showed a 28.5 percent binaural hearing loss. Container

was Benjamin's employer just before this hearing test. On the basis of this test, Benjamin filed a claim for benefits, which, as detailed below, was never independently adjudicated. Despite his hearing loss, Benjamin continued to work until April 3, 1992. On his last day of work, he was employed by SSA. Benjamin had two more hearing tests conducted, on January 12, 1994 and on September 25, 1996. The latter showed that his hearing loss had worsened to 34 percent.

Benjamin's claims for compensation under the LHWCA originally involved five employers.[1] However, on April 23, 1999, the number of employers was reduced to two, Container and SSA, because the ALJ determined that there was "no possible basis for imposing liability" on any party other than these two. The ALJ determined that the January 9, 1991 and January 12, 1994 hearing tests did not comply with statutory requirements and so could not be used to determine liability. Container was deemed to have exposed Benja-min to injurious noise prior to the February 4, 1991 audiogram and SSA conceded that it had done so as Benjamin's last employer before the September 25, 1996 audiogram.

On December 3, 1999, the ALJ issued his "Decision and Order Awarding Benefits." [2] The ALJ resolved two issues: (1) which of the two employers was responsible for Benjamin's hearing loss and (2) the extent to which the responsible employer's liability was mitigated because of Benjamin's pre-existing disability. The ALJ held that the audiograms conducted on February 4, 1991 and September 25, 1996, both "complied with all rules and regulations governing the measurement of hearing loss under the Act." However, he felt he was bound by the Ninth Circuit's opinions in *Port of Portland v. Director, Office of Workers' Compensation Programs (Ronne)*, 932 F.2d 836, 841 (9th Cir.1991) and *Ramey v. SSA*, 134 F.3d 954, 961 (9th Cir.1998) to pick one as the "determinative audiogram." He chose the one conducted

---

1. Benjamin's claim was brought as a "scheduled" injury under 33 U.S.C. § 908. The statute reads in relevant part:

   Compensation for disability shall be paid to the employee as follows:
   . . . .
   (c) Permanent partial disability: In case of disability partial in character but permanent in quality the compensation shall be 66 2/3 per centum of the average weekly wages, which shall be in addition to compensation for temporary total disability or temporary partial disability . . . and shall be paid to the employee, as follows:
   . . . .
   (13) Loss of hearing:
   (A) Compensation for loss of hearing in one ear, fifty-two weeks.
   (B) Compensation for loss of hearing in both ears, two-hundred weeks.
   (C) An audiogram shall be presumptive evidence of the amount of hearing loss sustained as of the date thereof, only if (i) such audiogram was administered by a licensed or certified audiologist or a physician who is certified in otolaryngology, (ii) such audiogram, with the report thereon, was provided to the employee at the time it was administered, and (iii) no contrary audiogram made at that time is produced.
   (D) The time for filing a notice of injury, under section 912 of this Act, or a claim for compensation, under section 913 of this Act, shall not begin to run in connection with any claim for loss of hearing under this section, until the employee has received an audiogram, with the accompanying report thereon, which indicates that the employee has suffered a loss of hearing.
   (E) Determinations of loss of hearing shall be made in accordance with the guides for the evaluation of permanent impairment as promulgated and modified from time to time by the American Medical Association.
   33 U.S.C. § 908(c).

2. Benjamin died as a result of prostate cancer on February 6, 1998. His claim was pursued by his daughter as the administratrix of his estate.

in 1996 since it "reflect[ed] the increased level of hearing loss caused by the claimant's employment after the February 4, 1991 audiogram." The ALJ also felt that precedent dictated that "the last employer before that [determinative] audiogram be liable for the claimant's entire injury." Since SSA had admitted to being that employer, it was held solely liable for the full extent of the hearing loss.

Having found SSA liable, the ALJ turned to the issue of mitigation. SSA had applied for Special Fund relief under 33 U.S.C. § 908(f). Under this provision of the LHWCA, an employer's liability may be partially mitigated because of the employee's pre-existing disability. *See American Mutual Ins. Co. of Boston v. Jones,* 426 F.2d 1263, 1267 (D.C.Cir.1970). The ALJ found that SSA was only liable for the extent of hearing loss measured as "the difference between the 1996 and the 1991 audiograms or 5.5 [percent]." The remainder, 28.5 percent, was to be paid by the industry's Special Fund, which spreads the costs over the entire industry.

Both the Director and SSA appealed the ALJ's decision to the BRB pursuant to 33 U.S.C. § 921(b)(3).[3] The Director claimed that the facts established that Benjamin suffered two distinct hearing losses, giving rise to two claims that were to be adjudicated separately, and that Container and SSA should have been found separately liable for the impairment caused by each injury. The Director also sought a credit to the Special Fund to be assessed against Container. SSA argued that the Board should permit assessment of liability on the basis of more than one determinative audiogram. The BRB rejected their arguments and affirmed the ALJ.

## STANDARD OF REVIEW

■■■ "The Board's interpretation of the LHWCA is a question of law that we review *de novo.*" *Gilliland v. E.J. Bartells Co.,* 270 F.3d 1259, 1261 (9th Cir.2001). The Board is required to "accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence." *Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1284 (9th Cir.1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). We review "Board decisions for errors of law and for adherence to the [substantial evidence] standard." *Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs,* 629 F.2d 1327, 1329 (9th Cir.1980). "Because the Board is not a policymaking agency, its interpretation of the LHWCA is not entitled to any special deference; the court must, however, respect the Board's interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute." *McDonald v. Director, Office of Workers' Compensation Programs,* 897 F.2d 1510, 1512 (9th Cir.1990). On issues of statutory interpretation, the Director's view is to be accorded considerable weight: It is to "the position of the Director of the Office of Workers' Compensation Programs ... to

---

**3.** 33 U.S.C. § 921(b)(3) reads:
The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.
33 U.S.C. § 921(b)(3).

whom, not the BRB, we owe *Chevron* deference." *Alexander v. Director, Office of Workers' Compensation Programs,* 273 F.3d 1267, 1269 (9th Cir.2001); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## DISCUSSION

■■■■ The "last employer rule" or "last employer doctrine" is a "judicially-created doctrine whereby full liability for an occupational disease resulting from the claimant's exposure to injurious stimuli during more than one period of employment or insurance coverage is assigned to a single employer or insurer." *Ronne,* 932 F.2d at 840 n. 3. In *Cordero v. Triple A Mach. Shop,* 580 F.2d 1331 (9th Cir.1978), the Ninth Circuit adopted the "last employer rule" in LHWCA cases as formulated by the Second Circuit in *Travelers Ins. Co. v. Cardillo,* 225 F.2d 137, 145 (2nd Cir.1955). The rule reads as follows:

> [T]he employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award.

*Cardillo,* 225 F.2d at 145. *See also Cordero,* 580 F.2d at 1337. This rule facilitates administrative convenience by allowing for full recovery in a single action after a disability is discovered, as opposed to piece-meal recovery in a multitude of actions against each contributing employer. "The underlying rationale is that all employers will be the last employer a proportionate share of the time." *Cordero,* 580 F.2d at 1336.

*Cordero*'s method of picking the employer on whom to place liability emphasizes the "onset of disability", i.e., *Cordero*

places "full liability on the [employer] covering the risk at the time of the most recent injury that bears a casual [sic: causal] relation to the disability." *Id.* at 1337. This formulation has been refined over the years. However, liability has generally been placed on the employer with whom the claimant was employed when the injury occurred and who was the 'last employer' prior to the claimant's recognition of his or her disability. In *Cordero* itself, the claimant was a welder who worked with various employers for over 30 years. After being exposed to injurious fumes over the years, he suffered from "pulmonary impairment" and eventually became unable to work. The liability was placed solely on "the last employer under which the claimant was exposed to the injurious welding fumes...." *Id.* at 1335.

In *Ronne,* a hearing loss case, the claimant worked as a winch and crane operator for a number of employers for approximately ten years. On June 19, 1981, he worked for Jones Oregon. He underwent an audiogram on June 22, 1981. Four days later, on June 26, 1981, he was working for the Port of Portland. The BRB deemed that the claimant became "aware" of his disability on July 6, 1981 (when his attorney received the doctor's report and audiogram results). Since the Port of Portland was the claimant's last employer before this date, the BRB, overturning the ALJ, held that the Port of Portland was solely responsible for the claimant's full loss. The Ninth Circuit reversed.

It is factually impossible for Ronne's employment with Port of Portland, which began four days after the audiogram was administered, to have contributed in any way to Ronne's hearing loss. We agree with the Board that *Cordero* does not require a demonstrated medical causal relationship between claimant's exposure and his occupational disease.

But *Cordero* does require that liability rest on the employer covering the risk at the time of the most recent injurious exposure *related* to the disability. We therefore agree with the Director that liability in this case must fall on Jones Oregon, the last employer who, by injurious exposure, could have contributed causally to Ronne's disability.

*Ronne*, 932 F.2d at 840–41 (emphasis in original) (footnote omitted). *Ronne*, then, emphasized the connection between where the injury occurred and where liability should fall.

In *Ramey*, one of the claimants underwent three audio-grams: one before he retired and two after. The claimant's complaint was that the ALJ wrongly fixed his benefit based on his weekly wage at the time that the first audiogram was conducted rather than "by reference to his last day of employment and exposure to injurious noise" (when his wage was higher). *Ramey*, 134 F.3d at 960. This argument was explicitly recognized by the Court to "bring[ ] into issue which employer will be liable" and, therefore, the application of the "last employer doctrine." *Id.* The ALJ had already decided that the latest audiogram was "the most reliable audiogram" and that the ones conducted before were "less accurate." *Id.* at 961. In such a situation, even though the onset of disability was clear from the earlier audiograms, the Court held that the latest audiogram was the one that counted for determining the liable employer. *See id.*

at 961–62. The Court stated that "for occupational hearing loss claims, the date of last exposure prior to the determinative audiogram should be used for purposes of calculating benefits." *Id.* at 962.

In the case before us, the ALJ held that there were two valid audiograms, *both* of which established loss of hearing due to employment. Benjamin filed separate claims related to these two audiograms. However, no action was initially taken on the claim based on the 1991 audiogram. Later, the ALJ treated the two claims as merged. At that point, it was a foregone conclusion that only one "last employer" would have to be determined, and the ALJ placed liability on SSA.

The ALJ erred in merging the two claims. The ALJ felt that he was bound by precedent to choose one determinative audiogram. The BRB agreed, noting that "the Ninth Circuit adopted the Board's definition of 'determinative' audiogram as being the one the administrative law judge determines is the best measure of claimant's hearing loss," citing *Ramey* for this proposition. However, no case holds that two entirely separate injuries are to be treated as one when the first one causes, or is at least partially responsible for, a recognized disability. The Supreme Court has held that occupational hearing loss results in immediate disability as a matter of law. *See Bath Iron Works v. Director, Office of Workers' Compensation Programs*, 506 U.S. 153, 164, 113 S.Ct. 692, 121 L.Ed.2d 619 (1993).[4] The *Cardillo* rule

---

4. In *Bath Iron Works*, the Supreme Court also stated: "The injury, loss of hearing, occurs simultaneously with the exposure to excessive noise. Moreover, the injury is complete when the exposure ceases. Under those circumstances, we think it quite proper to say that the date of last exposure—the date upon which the injury is complete—is the relevant time of injury for calculating a retiree's benefits for occupational hearing loss." *Id.* at

699–700. Container implies that this language means that the Supreme Court intended for liability to attach only when no further injury could occur. A contextual reading of *Bath* makes clear, however, that the Supreme Court was attempting to differentiate between occupational disease in which disability occurs at the time of injury (such as hearing loss) and occupational disease in which manifestation of disability occurs long after the

allocates liability to one employer, the last employer, after a disability determination has been made with a determinative audiogram. It does not imply that there can be only one last employer for every worker.

There is no Ninth Circuit authority either supporting or disapproving the practice of merger under similar facts. As Container notes, in *Blanchette v. Office of Workers' Compensation Programs*, 998 F.2d 109 (2nd Cir.1993), the Second Circuit stated in dictum that "[h]ad the issue been properly presented to us, we would probably have approved merger of the claims" at issue in the case. *Id.* at 114. However, the claims in that case involved a single employer, General Dynamics Corp., and merger of the successive claims merely would have consolidated them as against that employer. This authority is not persuasive in the case before us.

Here, it is clear that had the first claim been dealt with expeditiously, the second claim would have been considered a separate injury. *See* 33 U.S.C. § 908(f) (contemplating separate compensation for injury that occurs after permanent partial disability). It was only fortuitous that the case was delayed to the point that the second claim became part of the same dispute. It is true that the "last employer doctrine" is a rule of convenience and involves a certain amount of arbitrariness. However, the arbitrariness does not extend to an employer being liable for a claim supported by a determinative audiogram filed previously against a separate

employer that simply has not been resolved.

Treating the two claims separately is supported by sound public policy principles. In hearing loss cases, a claimant is likely to continue working even after the onset of disability. If a later audiogram is conducted—something the claimant will undoubtedly undergo in the hope of getting compensated for any additional injury—the first employer can simply point to the later audiogram as "determinative" and hand off the burden of primary liability. It is true that even under this application of the "last employer doctrine," the claimant will get compensated. However, as was the case here, any payments made to the claimant may be delayed until retirement or even well beyond. We reject such a rule.

Our holding is not inconsistent with *Ramey*. In *Ramey*, the ALJ determined that there was one audiogram that was the most reliable. *See Ramey*, 134 F.3d at 961. Here, there are two reliable audiograms pointing to two separate injuries. There is also no dispute that Benjamin's jobs at Container and SSA were both injurious. Under these circumstances, it was error to treat the claims stemming from two valid audiograms as relating to one, undifferentiated injury.[5]

The ALJ's error in merging two claims led to an incorrect application of the "last employer rule." Once the ALJ's initial mistake is corrected, application of the rule clearly places liability for 28.5 percent

exposure (such as asbestosis). In this context, the word "complete" only refers to the end of a discrete period in which disability-causing injury occurs, as marked at its end by a hearing test.

**5.** Container appears to allege that the earliest audiogram, conducted on January 9, 1991, could also be considered valid and, therefore, it too has a basis for pushing liability further

back on another employer. However, before the BRB, Container did not challenge the ALJ's finding that there were only two valid audiograms. Container was also deemed to have conceded that it was the employer that exposed Benjamin to the injurious noise prior to the February 1991 audiogram, a concession it also makes in its brief.

of the hearing loss on Container. It is undisputed that (1) the February 1991 audiogram showed that Benjamin suffered from this level of hearing loss; (2) Container was Benjamin's last employer prior to the recognition of this disability; and (3) Benjamin was exposed to injurious noise during his employment at Container before the February 1991 audiogram. Under the correct application of the "last employer rule" in this case, Container is liable for 28.5 percent of the hearing loss shown in the last audiogram.[6]

## CONCLUSION

In a hearing loss case, a claimant may continue working despite being considered disabled in the eyes of the law. Therefore, he may be exposed to additional injury over time. This should not mean that an employer who is liable under the application of the "last employer doctrine" should be able to escape liability just because a second employer can also be assigned liability under the same doctrine for a separate, later injury. The case law does not support the rule that there can be just one "last employer." The BRB decision assumes this is the rule, is incorrect, and is reversed. The case is remanded to the BRB for consideration in light of this opinion.

REVERSED AND REMANDED.

---

6. Container argues that ruling for petitioners will "engraft a wobbly system by which all of the parties will be uncertain of which employer should step forward and how much should be paid." On the contrary, as exemplified by this case, it is Container's position on the application of the "last employer rule" that results in uncertainty and delays. Container also ignores the fact that jurisprudence in this Circuit has always held as significant the connection between subjecting the claimant to injurious, disability-causing stimuli and liability. Our ruling, favoring compensation after a disability has been discovered, is based in part on the public policy of quickly compensating a claimant.